**TRUCK DRIVERS AND HELPERS LOCAL NO. 728, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Georgia Highway Express, Inc., Intervenor.

**GEORGIA HIGHWAY EXPRESS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Truck Drivers and Helpers Local No. 728, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor.

**Nos. 21082, 21272.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 12, 1968.

Decided April 18, 1968.

Certiorari Denied Nov. 12, 1968. See 89 S.Ct. 296.

See also 128 U.S.App.D.C. 216, 386 F.2d 643.

---

Mr. Robert L. Mitchell, Atlanta, Ga., with whom Mr. Herbert S. Thatcher, Washington, D. C., was on the brief, for petitioner in No. 21,082 and intervenor in No. 21,272.

Mr. John W. Wilcox, Jr., Atlanta, Ga., with whom Mr. Alexander E. Wilson, Jr., Atlanta, Ga., was on the brief, for petitioner in No. 21,272 and intervenor in No. 21,082.

Mr. Morton Namrow, Attorney, National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Attorney, National Labor Relations Board, were on the brief, for respondent.

Before EDGERTON, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

EDGERTON, Senior Circuit Judge:

These cases arose out of events which, followed a work stoppage by some 116 employees of Georgia Highway Express (the Company) on the evening of April 12 and the morning of April 13, 1966. Most of these employees unconditionally asked for reinstatement at noon on April 13.

The National Labor Relations Board (the Board) found that the Company violated section 8(a) (1) of the National Labor Relations Act [1] by refusing or delaying reinstatement of the strikers upon their unconditional request. In No. 21,272 the Company seeks review of this decision, contending that it had hired replacements for most of the strikers before noon of April 13.[2] In the same proceedings the Board refused to find that the Company violated Section 8(a) (3) of the Act also. In No. 21,082, Truck Drivers and Helpers Local No. 728 (the Union) seeks review of this decision.

### No. 21,272

The Supreme Court recently said in NLRB v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 378, 88 S.Ct. 543, 19 L.Ed. 2d 614 (1967): "unless the employer who refuses to reinstate strikers can show that his action was due to 'legitimate' and substantial business justifications,' he is guilty of an unfair labor practice. NLRB v. Great Dane Trailers [Inc.], 388 U.S. 26, 34 [87 S.Ct. 1792, 18 L. Ed.2d 1027] (1967). The burden of proving justification is on the employer. *Ibid."*

 If the Company could show that the replacements were hired before noon on the 13th, this would establish a "legitimate and substantial business justification." See NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938). The trial examiner and the Board, which adopted his findings, found that the Company failed to meet this burden.

The only direct evidence on the time of the new hirings was the testimony of Company officials, Wilder and Young, and a striking employee, Willie Hamm. The Company introduced exhibits based

---

1. 29 U.S.C. § 158(a) (1).

2. The Company did not claim to have hired replacements for all of the strikers. It contends that because of uncertainty due to the strike and re-routing of certain freight it did not immediately need as many employees as before. Forty-eight men who had not worked during the strike were reinstated within 8 days after it ended. Within a few months most strikers returned to their jobs.

on its personnel records which showed that new employees were hired on April 12 and 13, but did not show the times. Young, the Company's Terminal Manager, testified that no one was hired after noon of the 13th and that he, on advice of counsel, had ordered hiring stopped at that time. Wilder, the Assistant Superintendent, testified that most of the replacements reported for work by noon of the 13th. Hamm testified that he did not remember seeing any unfamiliar faces between the time of the walk-out and noon the following day. He also said that from his vantage point across the street from the normal dock employee entrance he had observed no new men entering or leaving the Company's premises during the strike.

The trial examiner, in determining that the Company had failed to show that 75 replacements were hired before noon, only partially relied on Hamm's rebutting testimony. He also inferred from the Company's failure to introduce the time cards of the new employees that they would have been inconsistent with the defense.[3] The trial examiner apparently drew equally unfavorable inferences from the Company's failure to call any supervisory employee to confirm Young's order to stop hiring at noon, or to call any of the transferees or replacements.

 This brief review of the record shows that substantial evidence supports the Board's conclusion that there were vacancies when the applications for reinstatement were made at noon on April 13. We therefore affirm.

No. 21,082

In order to find an employer guilty of a Section 8(a) (3) violation, it must appear that the Company discriminated against employees "to encourage or discourage membership in any labor organization." There is no evidence in the record that the Company had notice of the Union's interest before it received a telegram from a union official at 3:00 p. m. some three hours after the Company's alleged anti-union conduct. The Board's determination that the Company did not violate Section 8(a) (3) is clearly correct. We therefore affirm.

No. 21,272 affirmed.

No. 21,082 affirmed.

3. The time cards show when an employee begins work, but not when he was hired. In his report the trial examiner alluded to the fact that a requirement of a physical examination was waived to permit newly hired personnel to begin work immediately, and said "the initial time card of each replacement, if it had been produced, would have had substantial probative value on the hour of hire. For instance, the initial cards of all replacements who worked on April 12 and before noon on the 13th would have established their hire prior to that noon. The initial timecards of replacements who began work after that noon, if few in number, would have meant that the Respondent needed few witnesses to establish its defense that all were hired before that noon." The mere fact that they were stamped after noon does not, of course, conclude the Company, because hirings might have been made before noon, with the men hired reporting for work after noon. We note that the Company's witness Wilder testified that most of the replacements *reported to work* by noon on the 13th.