**RIO GRANDE FAMILY RADIO FELLOWSHIP, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**No. 21741.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 24, 1968.

Decided Nov. 18, 1968.

---

Mr. Lauren A. Colby, Washington, D. C., for appellant.

Mr. D. Biard MacGuineas, Counsel, Federal Communications Commission, for appellee. Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and William L. Fishman, Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

Rio Grande Family Radio Fellowship, Inc., a non-profit missionary organization operating in Texas, appeals pursuant to section 402 of the Federal Communications Act [1] from a Commission order, returning its application to operate a radio station out of Pharr, Texas.

1. Appellant submitted an application to operate a station on the frequency of 850 kHz.[2] out of Pharr, Texas. It is conceded that before the application could be accepted for consideration at a comparative hearing with other mutually exclusive applications, it was necessary to establish that the operations would not conflict with the Federal Communications Commission's "clear channel policy." [3]

1. 47 U.S.C. § 402 (1964).

2. The term "kilohertz" (kHz) means exactly the same thing as "kilocycles." Heinrich Hertz, a German scientist, was the discoverer of electromagnetic radiation (radio waves), and his name has been used for many years in foreign countries as the unit of frequency. One cycle per second is called one "hertz." A movement was started to introduce "hertz" terminology into the United States, and has been virtually 100% successful. The Commission has amended its rules to make the use of the term official.

3. The Commission policy on the "clear channel freeze" is set forth in 21 P. &

F.Radio Reg. 1801 (1961). In essence it amounts to a policy of holding open certain frequencies so that high-powered stations, denominated Class II-A station can be established some time in the future. When an applicant seeks to utilize a frequency which is adjacent to a "clear channel," it must demonstrate that its operations will comply with certain criteria set forth in Commission Rule 1.569, 47 C.F.R. § 1.569. A nonconforming application is customarily rejected as contrary to the "clear channel" policy, unless the applicant demonstrates reasons for waiving the Rule.

Appellant does not contend that its application met all the requirements of Commission Rule 1.569[4], which sets forth the criteria for clearance in regard to the "clear channel policy." With respect to one "clear channel" frequency, 830 kHz., appellant requested a waiver of the Commission Rule, claiming that its proposals would have "no special impact upon that channel [830 kHz.]."[5] Appellant's application then demonstrated how it would be possible to set up a Class II–A station on 830 kHz. at Encino, Texas, without interference from appellant's Pharr operations. The fact is, however, that appellant was seeking a waiver and was under a duty to allege and substantiate a negative contention: that there is no feasible site for a possible Class II–A station within the range of interference from appellant's proposed station.[6] The Commission need not grant a waiver of its Rules unless an application therefor sets out "adequate reasons why the Rules should be waived * * *." United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 771, 100 L.Ed. 1081 (1956). Appellant's statement—that its operations would have "no special impact"—does not suffice to justify waiver. When an applicant seeks a waiver of a rule, it must plead with particularity the facts and circumstances which warrant such action. The Commission staff must process annually thousands of applications. It cannot be expected to do research for applicants or to probe the underlying engineering or economic data to see whether they will support a greater claim than that made by experts or counsel. If the Commission staff were required to assume such a burden, little or nothing would be accomplished.

2. On July 18, 1968, subsequent to the filing of briefs in this court, the Commission issued a release imposing a "freeze" on the filing of additional proposals for radio stations, pending a rule-making inquiry into the desirability of licensing any more AM stations.[7] This freeze raises questions about the merits of the present "clear channel" policy. If the Commission expects to cease licensing new stations, pending applications post no obstacle to the licensing of future Class II–A stations. Since the Commission has pending several mutually exclusive applications for the frequency sought by appellant, the incremental administrative burden of including appellant in any hearings is relatively modest.[8] The importance of including all eligible applicants at comparative hearings cannot be overstated,[9] and we presume that the Commission would be interested in providing a hearing, if that is possible consonant with its rules, to an applicant like appellant, representative of a group involved in missionary and charitable activities along the Mexican border.

Of course, there are matters properly raised before the Commission. Our discussion will clarify, however, that our ruling is in no way intended to preclude consideration of these issues by the Commission which has before it, according to information at argument, a second petition for rehearing filed by appellant.

Affirmed.

---

4. 47 C.F.R. § 1.569 (1968).

5. Appellant's application also asserts that its operations will have "no material effect upon the future use of 830 kHz." This language also lacks the specificity required for requesting a waiver.

6. A mere allegation that a "clear channel" could be erected at Encino does not demonstrate that appellant's station will not interfere with a station installed elsewhere.

7. 33 Fed.Reg. 10343 (July 19, 1968).

8. The addition of a party may mean some added burden, but not one comparable to the burden involved in holding a broadcast hearing not otherwise scheduled. Once a hearing is planned, the Commission will have already made arrangements for a trial examiner and have assigned staff.

9. Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).