**TRUCK DRIVERS AND HELPERS LOCAL NO. 728, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Georgia Highway Express, Inc., Intervenor.**

**GEORGIA HIGHWAY EXPRESS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Truck Drivers and Helpers Local No. 728, Intervenor.**

Nos. 21969, 22095.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 24, 1969.

Decided June 23, 1969.

Petition for Rehearing Denied Oct. 10, 1969.

---

Mr. Herbert S. Thatcher, Washington, D. C., with whom Mr. Robert L. Mitchell, Washington, D. C., was on the brief, for petitioner in No. 21,969 and intervenor in No. 22,095.

Mr. John W. Wilcox, Jr., Atlanta, Ga., with whom Mr. Alexander E. Wilson, Jr., Atlanta, Ga., was on the brief, for petitioner in No. 22,095 and intervenor in No. 21,969.

Mr. Elliott Moore, Attorney, National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, and Marcel Mallet-Prevost, Assistant General Counsel, National Labor Relations Board, were on the brief, for respondent.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

PER CURIAM:

Georgia Highway Express, Inc. (Company) and Truck Drivers & Helpers Local Union No. 728 (Union) bring these petitions to review certain aspects of an order of July 17, 1968, of the National Labor Relations Board. The order upheld the certification of the Union as bargaining agent for the Company's Atlanta Terminal employees, and directed the Company to bargain and to post a notice as to the Board's order. The

Board denied the intervenor Union's motion for counsel fees and other extraordinary relief. We think the Board's order sound in all respects and grant enforcement.

1. The Company complains in essence of the Board's application of the doctrine of estoppel whereby the determination of the "employee status" of certain individuals in an unfair labor practice proceeding was held conclusive of their status for the purpose of determining the eligibility of their votes for the representation election.

This dispute dates back to April 2, 1966. At that time some fifty of the Company's then unorganized employees walked off the job in economic protest. The walkout spread, but by noon of April 13, the employees, through a spokesman, made unconditional offers for reinstatement. During the following weeks some of the strikers were rehired; others were not. An unfair labor practice proceeding ensued wherein the Company was charged with violating section 8(a) (1) of the Labor Act by denying reinstatement to various named individuals.[1] These charges were resolved adversely to the Company and this court has ordered that the Board's order be enforced.[2]

The controversy before us centers on the estoppel effect of the determination of the unfair labor practice dispute to the election which was held on June 29, 1966. One week after the walkout, on April 20, the Union filed a petition for an election. The election proceedings have been the subject of numerous pleadings before the Board and the Regional Director, and the Regional Director has issued three opinions in the matter of the challenges to various ballots. The focus of this petition is the challenge to fifty-seven ballots based on the status of the voters, who were individuals who had participated in the April 12–13 walkout. The election outcome depends on the validity of these contested votes.[3]

On September 30, 1966, the Director deferred ruling on the matter pending the resolution of the unfair labor practice charges that had been filed by the Union in June 1966.[4] Following the Board's decision of June 19, 1967, the Regional Director ordered that the fifty-seven ballots be opened and counted in view of the Board's determination that the striking individuals should receive back pay and reinstatement. The Board denied the Company's petition for review of the Regional Director's ruling and the Director certified the Union on November 9, 1967. The instant proceedings arise out of the Company's refusal to recognize and bargain with the Union based on the November 9 certification. The General Counsel filed an 8(a) (5) complaint and moved for summary judgment. The Board granted the motion and denied the Company's request for a hearing.

■ 2. There is sound scope for principles of estoppel in administrative adjudications.[5] There is no reason why an agency any more than a court should be required to squander limited and overtaxed resources of decisional and staff personnel by reconsidering matters already fairly heard and determined.[6]

1. See 29 U.S.C. §§ 151 et seq. (1964). The complaint also charged a violation of section 8(a) (3). Neither the Trial Examiner nor the Board found it necessary to reach the issue as to § 8(a) (3).

2. Enforcement was granted in No. 21082 and 21272. Truck Drivers & Helpers Local No. 728 v. NLRB, 131 U.S.App. D.C. 195, 403 F.2d 921, cert. denied, Georgia Highway Express Inc. v. National Labor Relations Board, 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 272 (1968).

3. A total of sixty-seven ballots were under challenge.

4. The General Counsel filed a complaint on October 5, 1966.

5. See Pacific Seafarers v. Pacific Far East Line, 131 U.S.App.D.C. 226, 404 F.2d 804 (1968), cert. denied, 393 U.S. 1093, 89 S.Ct. 872, 21 L.Ed.2d 784 (1969).

6. We recently had occasion to note the calendar congestion that plagues judicial dockets in an opinion extending the appli-

■ In the case before us the application of the principles of estoppel was well within the Board's discretion. Both the unfair labor practice proceeding and the representation proceeding involved what was in essence the same key question, whether the involved individuals had the status of "employees" for the purpose of the Labor Acts. The question of eligibility to vote turns on whether an individual is employed or has a reasonable expectation of reemployment with a company.[7] The issue in the unfair labor practice proceedings involved additional issues of the status of the individuals named in the complaint, whether they had been permanently replaced or otherwise eliminated from the Company's payrolls for valid reasons.[8]

The Trial Examiner whose findings in the 8(a) (1) hearings were adopted by the Board and incorporated in a decision and order enforced by this court,[9] found that the fifty-seven individuals named in the General Counsel's complaint had not been replaced and were entitled to reinstatement as of the noon offer to return to work.

■ It would of course have been a valid defense if the Company had contended before the Board in the prior (unfair labor practice) proceeding that some or all of the individuals were not entitled to a Board remedy because they were not

employees and had never been on the payroll.[10] We think the Company is foreclosed from raising this defense for the first time in the subsequent (election) proceeding before the Board or its Regional Director. The 8(a) (1) proceeding was a full-fledged, adjudicative determination made after evidentiary hearing.[11]

This is not a case where a party could claim it could not fairly surmise the import of litigation for future controversies. The Company was on express notice that the eligibility decision was being deferred pending the 8(a) (1) hearings. It cannot complain because it is bound by a determination on an issue which it chose to concede.

An additional question might have been raised in the later proceeding, that individuals who were held by the Board to be employees as of April 13, were later reemployed elsewhere, or for other reasons were no longer actually employed as of the June 1966 eligibility for balloting. No such issue of change in status subsequent to April 13 was the subject of either a meaningful proffer to the Trial Examiner, or focused contention presented to the Regional Director or the Board. The submissions were devoid of any suggestion that the Company could or would supply evidence that the status of certain individuals had changed from April to June. The Company's offer to

cation of estoppel beyond the boundaries built of technical rules of mutuality. *See* Lober v. Moore, 135 U.S.App.D.C. ——, 417 F.2d 714 (March 18, 1969). That administrative agencies groan under a similar burden has been recognized in this court's opinions. *See e. g.* Rio Grande Family Radio Fellowship, Inc. v. FCC, 132 U.S.App.D.C. 128, 406 F.2d 664 (1968).

7. *See* NLRB v. Atkinson Dredging Co., 329 F.2d 158, 162 (4th Cir.), cert. denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964) ; The Marley Co., 131 N.L.R.B. 866, 869 (1961).

8. *See* NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967) ; NLRB v. Great Dane Trailers, 388 U.S. 26, 34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967).

9. Truck Drivers & Helpers Local No. 728 v. NLRB, 131 U.S.App.D.C. 195, 403 F.2d 921 (1968), cert. denied, 393 U.S. 935, 89 S.Ct. 296, 21 L.Ed.2d 272 (1969).

10. While the Company appears to argue that no finding was made that the named persons were employees of the Company before the strike, that finding is implicit in the Board's decision and order which directed the Company to reinstate the as yet unhired workers and award back pay to those whose reemployment had been unlawfully postponed.

11. There may be less scope for estoppel doctrine where the failure to "litigate" an issue came in an earlier representation proceeding, where prompt disposition is a key objective, and there is no adversarial proceeding with full procedural incidents of adjudicative determination.

present additional evidence alluded only to evidence to "show that the employees were replaced and had no reasonable expectancy of reemployment at the time of election,"—wording also applicable to persons claimed to be without employee status on April 13.

The Company's position is not advanced by a motion which asked that "the record be reopened so that the employer may have an opportunity to bring forward any time cards or other documents which would provide further evidence of the status of the alleged discriminatees on the eligibility date for the election." The vague and bare assertion contained neither an allegation as to specific employees, nor an indication that what the Company had in mind was evidence of a change in status of employees subsequent to April 13. These papers are not sufficient to show that the Board abused its discretion in denying review of the certification order or granting summary judgment in the 8(a) (5) proceedings.[12]

We see no merit in the Company's alternative contention seeking to avoid estoppel on the ground that its burden is not the same in the two proceedings. In some situations such a point may be material. *Cf.* Brightheart v. McKay, D.C.Cir. 21813 (April 9, 1969). Here, however, burden of proof was on the Board in the unfair labor practice proceeding, and hence there is no unfairness to the Company in this regard. While the burden of coming forward with evidence to show justification for the dismissal was put on the Company, this of course arose only after the General Counsel made a prima facie case of violation.

There is no merit in the suggestion that although the Company was rightly held responsible in an 8(a) (1) proceeding for reinstatement of the employees with back pay, it has a basis for now arguing they were ineligible to vote in the selection of union representatives.

Application of the doctrine of estoppel is in furtherance of the Congressional objective of expeditious enforcement of Board decrees, assuring compliance with fair procedures. "To require that the Board reopen and reconsider a matter that was subject to prior consideration would unnecessarily prolong the controversy, and prevent the orderly settlement of labor" disputes. NLRB v. Tennessee Packers, Inc., 379 F.2d 172, 180 (6th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). We conclude that Georgia Express has "had its day in court" and that the Board did not abuse its discretion in granting the General Counsel's motion for summary judgment in this unfair labor practice proceeding.

■■ 3. The Union argues that the Board's order did not go far enough and that the Company should have been required to pay the Union's counsel fees and mail notices to each of its employees at every job location. The Board's wide discretion is at its broadest in matters of remedial policy. *See* Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 215–216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). We cannot conclude that the Board has strayed beyond the zone of the permissible by issuing its standard decree directing the Company to bargain forthwith and post a notice to that effect.

Petition for enforcement granted.

Petitions for review denied.

12. *Compare* NLRB v. Atkinson Dredging Co., *supra* note 7, 329 F.2d at 164.