**560 BROADCAST CORPORATION,**
**Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COM-**
**MISSION, Appellee.**

**No. 22471.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 9, 1969.

Decided Oct. 14, 1969.

Mr. B. Dwight Perry, Washington, D. C., with whom Messrs. Earl R. Stanley and Charles J. Robertson, Washington, D. C., were on the brief, for appellant.

Mr. Joseph A. Marino, Counsel, Federal Communications Commission for appellee. Messrs. Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, and Bernard C. O'Neill, Counsel, Federal Communications Commission, were on the brief for appellee. Mrs. Lenore G. Ehrig and Mr. Stuart F. Feldstein, Counsel, Federal Communications Commission, also entered appearances for appellee.

Before WRIGHT, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

This case involves an appeal from a decision of the Federal Communications Commission rejecting as unacceptable for filing an application for authority to operate an AM broadcast station at night. We affirm the decision of the Commission.

560 Broadcasting Corporation (hereinafter WQTE) is the licensee of WQTE, an AM, daytime-only, radio station in Monroe, Michigan. It applied to the Commission for permission to operate at night. The Commission returned the application [1] as unacceptable for filing because it did not meet the standards for new nighttime operation—as set out in

---

1. In fact, there were two submissions to the Commission. The first application, filed March 17, 1966, was denied in an order adopted December 7, 1966. 5 F.C.C. 2d 886. WQTE retendered the application with a petition for reconsideration. It also filed new material. This second petition was denied by the Commission in a memorandum opinion and order adopted October 2, 1968. 14 F.C.C.2d 807. Appellant sought review under § 402(b) of the Communications Act of 1934, 47 U.S.C. § 402(b) (1964).

Commission Rule 73.24 [2]—and because appellant had not shown reasons sufficient to justify waiver of the rule.

Because AM radio signals travel greater distances at night, the Commission has imposed a series of restrictions on nighttime operations of certain licensees.[3] Rule 73.24 provides that no new applications for nighttime service will be received unless the applicant can show that the proposed service will provide a first signal to areas presently unserved. At least 25 per cent of the proposed interference-free service must be in so-called "white areas," regions which presently have no nighttime AM radio service.

■ WQTE's proposal would not have served any "white area." Therefore, appellant requested a waiver of the rule and a hearing on its claims. Both parties recognize that the Commission does not have to afford a full hearing on each application. In order to avoid repeated hearings on identical issues, it has the power to establish general rules outlining certain policies.[4] But since the Commission has a duty to serve the "public interest," [5] it must be ready to waive those general requirements where the public interest would require such a waiver.[6] The burden of pleading the specific facts and circumstances which, if true, would make the general rule inapplicable in a particular situation rests on each applicant requesting a waiver.[7]

■ WQTE did attempt to show that a waiver was required in its situation. In supporting its petition, WQTE presented to the Commission engineering studies which indicated that its proposed service would cause no interference with other stations. It also offered evidence to show that the existing nighttime service from Toledo and Detroit did not adequately serve the unique local needs of the 20,000 residents of Monroe. WQTE's primary argument on appeal is that the Commission failed to explain why WQTE's detailed allegations, if proved, were not sufficient to justify waiver of the "white area" requirement.[8]

This court has recently considered the problem of specificity in agency findings and opinions. In *WAIT Radio* we said that "an agency or commission must articulate with clarity and precision its findings and the reasons for its deci-

---

2. *See* 47 C.F.R. § 73.24(b) (3) (ii) (1969). The Rule provides:

  "An authorization for  *  *  *  [an] increase in facilities of an existing station will be issued only after a satisfactory showing has been made  *  *  *

  *     *     *     *     *

  "(3) That a proposed new nighttime operation  *  *  *  would  *  *  *  provide a first primary AM service to at least 25 percent of the area within the proposed interference-free nighttime service area or at least 25 percent of the population residing therein."

3. *See, e. g.,* 47 C.F.R. §§ 73.21–.23 (1969).

4. *See* United States v. Storer Broadcasting Co., 351 U.S. 192, 202, 76 S.Ct. 763, 100 L.Ed. 1081 (1956).

5. *See* 47 U.S.C. § 309(a) (1964); United States v. Storer Broadcasting Co., *supra* Note 4, 351 U.S. at 203, 76 S.Ct. 763.

6. *See* National Broadcasting Co. v. United States, 319 U.S. 190, 225, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).

7. Rio Grande Family Radio Fellowship, Inc. v. F.C.C., 132 U.S.App.D.C. 128, 130, 406 F.2d 664, 666 (1968).

8. WQTE also argued that the Commission acted arbitrarily because it granted a waiver to WKEN in Dover, Delaware, in circumstances which WQTE thought less compelling than its own. However, in its decision of October 2, 1968, the Commission adequately distinguished the cases in terms of the nature of the area to be served and the efficiency of the service to be provided. Furthermore, we have noted before that "comparability in this area is an inexact concept at best," and the reviewing court's role is limited in these matters. It must allow the Commission "substantial latitude" in the continuing administration of a rule such as this. James S. Rivers, Inc. (WJAZ) v. F.C.C., 122 U.S.App.D.C. 29, 31 n. 3, 351 F.2d 194, 196 n. 3 (1965).

sions." [9] But at the same time "the agency is not required to author an essay for the disposition of each application. It suffices, in the usual case, that [the court] can discern the 'why and wherefore.' " [10] We hold that the Commission met its burden in this case.

In its two memorandum opinions the Commission set forth the allegations made by WQTE. It then noted that Monroe was not totally without nighttime service because two nighttime AM stations already served Monroe, and a construction permit had been issued for a local full-time FM service in that town. It concluded that, since Monroe already received "considerable primary service," the petition was "not compatible with the Commission's concern about additional nighttime operations on an already crowded band * * *." [11] The Commission also incorporated by reference the policy considerations which it had explored during the complete reexamination of its frequency allocation policies, a reexamination which culminated in 1964 in the adoption of Rule 73.24. According to the Commission, the applicant had failed to "countervail" those policy considerations which led to the adoption of the rule.

In its order [12] adopting the new rule, the Commission had discussed in great detail the relative merits of allegations just like those made by WQTE in its application for a waiver. In that order the Commission recognized that there were significant benefits to be derived from additional AM outlets designed to serve local needs. As WQTE pointed out in its application, distant stations often are unable to provide details of local traffic hazards, flooding conditions, and other emergency information. However, the Commission added, additional AM services also cause difficulties. Each new service on a given frequency inevitably tends to raise the level of interference on that frequency, even though the interference may not be considered "objectionable" under Commission rules. [13]

In addition to the growing problem of interference, the Commission weighed two other factors against the establishment of additional nighttime AM outlets to serve local needs. First, television has supplanted radio as the dominant medium at night. Second, the Commission found that FM radio service is better suited than AM to provide a large number of stations which can cater to the needs of local communities, since it does not produce the same type of interference problems.

WQTE did not make any contentions which were not fully discussed by the Commission in its memorandum opinions in this case or in its rule-making order. WQTE simply could not avoid the Commission's finding that "each new signal added on a particular channel increases the probability of interference." [14] While reduction of local services in some cases might be a cost of preventing increased interference, in this case a local FM station has been licensed to meet Monroe's local nighttime needs. Since no special factors were adduced by WQTE which would require the Commission to waive its established rules, its action must be

Affirmed.

9. WAIT Radio v. F.C.C., 135 U.S.App. D.C. ——, ——, 418 F.2d 1153, 1156 (decided June 24, 1969).

10. *Id.* 135 U.S.App.D.C. at ——, 418 F.2d at 1157.

11. 5 F.C.C.2d at 887.

12. In the Matter of Amendment of Part 73 of the Commission's Rules, regarding AM station assignment standards, Report and Order, 2 Pike & Fischer Radio Reg.2d 1658 (1964).

13. Report and Order, *supra* Note 12, at 1671.

14. *Ibid.*