**TUCSON RADIO, INCORPORATED (KEVT), Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**No. 24614.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 16, 1971.

Decided Nov. 23, 1971.

Mr. Alvin L. Korngold, Tucson, Ariz., for appellant.

Mr. Charles M. Firestone, Counsel, Federal Communications Commission, with whom Messrs. Richard E. Wiley, Gen. Counsel, John H. Conlin, Associate Gen. Counsel at the time the brief was filed, and Joseph A. Marino, Counsel, Federal Communications Commission, were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN, Circuit Judge, and GOURLEY,* Senior District Judge for the Western District of Pennsylvania.

BAZELON, Chief Judge:

In this appeal, Tucson Radio, Incorporated (KEVT) challenges the Federal Communications Commission's denial of its petition for waiver of Section 73.-24(b) (3) (ii) of the Commission's rules without a hearing. We affirm the Commission's decision to deny a waiver but remand the case to the Commission to consider the question of whether KEVT *fulfills* the requirements of subsection (ii) which were added as an amendment to Section 73.24(b) (3) in 1968.

In 1967, KEVT an AM Tucson radio station operating only during the day-

light hours, applied to the Commission for permission to construct a new antenna system for nighttime operation in the Spanish language. At that time, Section 73.24 provided that no new applications for nighttime operations would be received by the Commission unless the applicant showed that it would serve 25% of an interference-free geographic area which currently had *no* nighttime service. This rule was directed to the problem of the increased interference caused by radio signals at night and sought to strengthen the bar against inefficient proposals. See Report and Order, 24 Fed.Reg. 9492, 2 P & F Radio Reg. 1658 (1964) and 47 C.F.R. § 73.-21–.23 (1971).

Appellant did not then, and does not now, contend that it could meet this requirement of service to a geographic area. KEVT therefore submitted a petition for waiver of this rule to allow it to file its application with the Commission. It argued that the public interest would be served by a waiver since no radio station in the Southern Arizona region provided nighttime service to the substantial number of people who think and speak in Spanish in that area. It alleged that approximately 70,000 of these people lived in Tucson, constituting one-third the population of that city, and that Spanish-speaking people in adjoining communities amounted to at least an additional 70,000 to 100,000 people. Appellant annexed to its petition a number of letters from public and private officials who supported its analysis of the population and the need for a nighttime radio station in Spanish.

In 1968, Section 73.24 of the Commission's rules was amended to provide as an alternative to service of a geographic area the service of a substantial segment of the population. The rule currently reads as follows:

An authorization for . . . increase in facilities of an existing station will be issued only after a satis-

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1964).

factory showing has been made in regard to the following. . . .

(3) That a proposed new nighttime operation . . . would . . . (ii) provide a first primary AM service to at least 25 percent of the area within the proposed interference-free nighttime service area *or at least 25 percent of the population residing therein.* (Amendment italicized) 47 C.F.R. § 73.24(b) (3) (ii) (1971).

Appellant did not amend its petition but continued to seek a waiver of this requirement from the Commission.

In 1970, the Commission issued a decision denying appellant's petition on the ground that the facts presented by KEVT did not warrant the conclusion that there was an urgent need for a nighttime Spanish-speaking station in Tucson. The Commission stated that there was no evidence that the Spanish-speaking population referred to did not also speak and understand English; and that appellant had failed to substantiate its claim that none of the existing stations in Tucson would broadcast in Spanish.

■ Our agreement with this latter statement causes us to uphold the Commission's denial of KEVT's request for waiver without a hearing. It is well-established that the Commission does not have to hold a full hearing on each application but may establish general rules outlining certain of its policies. See United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 100 L.Ed. 1081 (1956). The burden is on the applicant seeking waiver of these rules to plead specific facts and circumstances which would make the general rule inapplicable. 560 Broadcast Corp. v. Federal ·Communications Commission, 135 U.S.App.D.C. 330, 418 F.2d 1166 (1969).

In this case, KEVT stated only its own conclusion that adequate nighttime service in Spanish would not be forthcoming from the eleven FM and AM stations in Tucson. It referred to no examples of refusals to serve upon request, or to attempts made to bring the existing need to the attention of the other stations and the Commission through challenges to license renewals or the filing of competing applications as outlined in the Commission's Policy Statement Concerning Comparative Hearings Involving Regular Renewal Applicants, 22 F.C.C.2d 424 (1970). Since no facts of this kind were alleged to establish an unfilled need, the Commission did not abuse its discretion in summarily refusing to waive its established requirement.

■ However, it appears from KEVT's petition that, in view of the amendment to Section 73.24 quoted above, KEVT may now meet this requirement rather than require a waiver of it.

The petition alleges facts which indicate that a substantial portion of the population KEVT proposes to serve may speak and think only in Spanish. If 25 percent of the population in this Southern Arizona area receives in effect *no* nighttime AM radio service because it cannot understand English sufficiently to comprehend English broadcasts, then a station which proposes to serve it in Spanish may provide a "first primary service" within the meaning of Section 73.24(b) (3) (ii).[1] Resolution of this is-

---

1. The Commission has stated that the specialized nature of proposed programming "cannot ordinarily be considered a basis for overriding . . . important policy considerations." Memorandum Opinion and Order of the Federal Communications Commission, January 23, 1970, Appendix at 1. While we do not decide the issue, this statement seems relevant primarily for applications seeking a waiver of policy requirements. If "first primary service" is interpreted to include the unique situation in this case, it will not unleash a flood of applications for licenses which the Commission will have to consider because 25 percent of potential listeners may prefer classical music to rock and roll. In construing this regulatory language, there is a crucial difference between failure to *serve* a group which cannot understand the language broadcasted, and a failure to *reach* a group which chooses not to listen because of program content.

sue will turn first on the interpretation of the phrase "first primary service," and second, if the phrase means "service in a comprehensible language," whether exclusive Spanish-speakers do constitute 25 percent of the relevant population.

It is arguable that the Commission has not yet interpreted this language since the question of compliance with Section 73.24(b) (3) (ii) was not raised in KEVT's petition. It is also possible that "first primary service" may refer only to the number of *signals* in operation within a certain area and not to whether those signals in fact offer *service* to 25 percent of the population. We think that the Commission should be the first to interpret the regulatory language.[2]

We would not agree that KEVT's petition should be dismissed without a hearing because the station has failed to offer conclusive proof that 25 pcercent of the population speaks no English. Section 309(e) of 47 United States Code mandates a hearing when a "substantial and material question of fact is presented."[3] The appellant's petition, on its face, does present such a question.[4]

Because we think there are important issues and interests which require speedy resolution, upon remand the Commission shall consider the issues of law and fact outlined above as expeditiously as possible after KEVT has submitted an amendment to its petition which properly raises the question of its compliance with Section 73.24(b) (3) (ii).

---

2. *Cf*. Social Security Bd. v. Nierotko, 327 U.S. 358, 368–369, 66 S.Ct. 637, 90 L. Ed. 718 (1946); National Labor Relations Bd. v. Hearst Publications, Inc., 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); and Interstate Commerce Comm'n v. J–T Transport, Co., Inc., 368 U.S. 81, 127, 82 S.Ct. 204, 7 L.Ed.2d 147 (dissenting opinion of Frankfurter, J.) (1961).

3. The statute provides in part:
(e) If, in the case of any application to which subsection (a) of this section applies, a substantial and material

question of fact is presented or the Commission for any reason is unable to make the finding specified in such subsection, it shall formally designate the application for hearing on the ground or reasons then obtaining.
\* \* \*

4. *Cf*. Carroll Broadcasting Co. v. Federal Communications Comm'n, 103 U.S.App. D.C. 346, 350, 258 F.2d 440, 444 (1958) and Metropolitan Television Co. v. United States, 95 U.S.App.D.C. 326, 327, 221 F.2d 879, 880 (1955).