**COLUMBIA COMMUNICATIONS CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee, Ford Aerospace Satellite Services Corp., Hughes Communications Galaxy, Inc., RCA American Communications, Inc., GTE Spacenet Corporation, et al., Martin Marietta Communications Systems, Inc., Federal Express Corporation, American Satellite Company, Intervenors.**

**COLUMBIA COMMUNICATIONS CORPORATION, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents, RCA American Communications, Inc., Federal Express Corporation, National Exchange, Inc., Western Union Telegraph Company, American Satellite Company, Hughes Communications Galaxy, Inc., Martin Marietta Communications Systems, Inc., Ford Aerospace Satellite Services Corp., Pan American Satellite Corp., Creditors of the U.S. Satellite Systems, Inc., Whitely Communications Company, Intervenors.**

Nos. 85–1628, 85–1697.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1987.

Decided Nov. 3, 1987.

Phillip L. Spector, Washington, D.C., for appellant in No. 85–1628 and petitioner in No. 85–1697. Thomas James Lane was on the brief for appellant/petitioner. Jeffrey H. Olson, Washington, D.C., also entered an appearance for Columbia Communications Corp.

Laurel R. Bergold, Counsel, F.C.C., with whom Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, John E. Ingle, Deputy Associate Gen. Counsel and Loretta J. Garcia, Counsel, F.C.C., Washington, D.C., were on the brief for appellee in No. 85–1628 and respondent in No. 85–1697. Jane Mago, Counsel, F.C.C., Robert B. Nicholson and George Edelstein, Attys., Dept. of Justice, Washington, D.C., also entered appearances for F.C.C.

Gary M. Epstein, Maureen E. Mahoney and James F. Rogers, for Hughes Communications Galaxy, Inc. and Leslie A. Taylor for GTE Spacenet Corp. were on the joint brief for intervenors, Hughes Communications Galaxy, Inc., et al. in Nos. 85–1628 and 85–1697.

Jay E. Ricks, Peter A. Rohrbach and Carl J. Cangelosi entered appearances for inter-

venor, RCA American Communications, Inc. in Nos. 85–1628 and 85–1697.

Tyrone Brown and Philip L. Malet entered appearances for intervenor, Ford Aerospace Satellite Services Corp. in Nos. 85–1628 and 85–1697.

Joseph M. Kittner and James S. Blaszak entered appearances for intervenor, Martin Marietta Communications Systems, Inc. in Nos. 85–1628 and 85–1697.

Nathaniel P. Breed, Jr., Robert E. Conn and Howard H. Shafferman entered appearances for intervenor, Federal Express Corp. in Nos. 85–1628 and 85–1697.

H. Richard Juhnke and Robert N. Green entered appearances for intervenor, Western Union Telegraph Co. in No. 85–1697.

Joan M. Griffin entered an appearance for intervenor, American Satellite Co. in No. 85–1697.

Scott Robb entered an appearance for intervenors, Creditors of the U.S. Satellite Systems, Inc., et al. in No. 85–1697.

Phillip L. Spector and Regina Harrison entered appearances for intervenor, Nat. Exchange, Inc. in No. 85–1697.

Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Columbia Communications Corporation ("Columbia") seeks to overturn two Federal Communications Commission ("FCC" or "Commission") orders. One order strengthened and restated the financial requirements for domestic satellite applications, and the other denied Columbia's satellite application for failure to satisfy those financial requirements. Columbia concedes that its application did not meet the FCC's financial qualifications. It contends, however, that it submitted an effective request for a waiver of those requirements and that the FCC erred in refusing to consider that request. We find that the waiver request need not have been separately considered and that the FCC's implicit denial of the waiver request when it rejected Co-

lumbia's satellite application was not improper. We affirm the FCC orders.

## BACKGROUND

In its *1983 Processing Order*, 93 F.C. C.2d 1260 (1983), the FCC announced the application guidelines and deadline for a fourth round of satellite license awards. Two aspects of that announcement are relevant to Columbia's claim. First, the FCC gave "notice to interested parties [that] ... it is not certain that we will be able to accommodate all qualified applicants ... in the time frame and the manner they desire." *Id.* at 1261. Because applications were thus expected to exceed available orbital spaces, the Commission also emphasized that the technical and financial information required of all applicants was crucial. "[W]e intend to avoid, to the extent possible, speculative applications," the Commission warned. "Failure to comport with these requirements ... will result in dismissal of an applicant's application." *Id.* at 1263. Among the data required by the Commission (and specified in an appendix to the *1983 Order*) was "[d]etailed information on the financial qualifications of the applicant to construct and launch the proposed satellites including ... [t]he source and amounts of funds firmly committed to ... [and] potentially available to the satellite program on a year-by-year basis." *Id.* at 1268.

On November 7, 1983, Columbia filed its application for two satellite licenses. That application contained a summary description of the financing plan. Having almost no assets, Columbia projected that it would raise $414 million by selling 96 transponders on its satellites. This amount would suffice to finance the satellite project, which Columbia estimated to cost $277 million.

The Commission's *1983 Order* also provided that "[i]f, for some reason, an applicant is unable to respond to a specific requirement, the application should be accompanied by a request that *sets forth the reasons that support a waiver* of (or an exception to), in whole or in part, the particular requirement." *Id.* at 1263 (emphasis added). Accompanying Columbia's satellite application was a letter from its president, "formally requesting a waiver of or an exception to any possible defect in the applications occurring as a result of the proposed nature of the Corporation's business." Beyond this broad request, the letter did not specify the requirements Columbia sought to have waived. Columbia simply stated that the "unique and innovative nature of [its] business plans ... render some of the [FCC's] requirements not applicable." Finally, the letter requested "the opportunity to elaborate, if necessary, on any point requiring additional clarification" and raised the possibility of a hearing.

On May 7, 1985, the Commission announced that satellite applications in the fourth round had indeed exceeded orbital spaces and that "[a] significant number of these applications appear to be speculative in that the applicant has not documented firm financial capabilities to construct the proposed satellite system." *Notice of Proposed Rulemaking*, 101 F.C.C.2d 223, 224 (1985). The FCC then reiterated its requirement that applicants meet the financial qualifications. The Commission reaffirmed those qualifications in the form of proposed regulations, specifying that applicants "shall demonstrate ... current financial ability to meet the (1) [e]stimated costs of proposed construction and/or launch, and ... (2) [e]stimated operating expenses for one year after launch...." *Id.* at 240. Applicants were given thirty days to supplement their files with any information that was necessary under the new regulations.

Columbia did not supplement its application with additional financial data. It did file three statements with the FCC, protesting the proposed regulations. These contained a general averment that Columbia had "received commitments to purchase transponder capacity which will provide more than ample funds to construct, launch and operate its system."

On August 29, 1985, the Commission issued an order denying Columbia's satellite application on the grounds that Columbia had "failed to demonstrate its financial

qualifications." *Application Order*, 103 F.C.C.2d 618, 619 (1985). "The fact that Columbia has a marketing plan for its transponders," the FCC stated, "provides no assurance that its efforts will be successful or that the necessary funds will be obtained. Thus, Columbia has not satisfied our requirements...." *Id.* at 620. On September 27, 1985, Columbia filed a notice of appeal from the FCC's order in this court. Subsequently, Columbia petitioned for review of the order making the FCC's financial requirements regulations final. The appeal and petition for review have been consolidated.

## COLUMBIA'S APPEAL

Columbia acknowledges that its application did not meet the FCC's financial requirements—either as those requirements were formulated when the application was submitted or under the new regulations adopted in 1985. Indeed, in its brief before this court, Columbia points out that "[e]ven the most cursory review of Columbia's application would have revealed considerable omission of certain specific requirements that were unable to be provided due to Columbia's non-traditional method of financing its system." Thus, the only issue before us is whether the Commission failed to give sufficient consideration to Columbia's waiver request.

Columbia contends that the Commission was required to give separate consideration to its waiver request, and it implies this consideration should have included a hearing. For this proposition, Columbia relies on a statement by the FCC, which the Supreme Court cited in a television licensing case: "[I]t might be an abuse of discretion to fail to hear a request for a waiver which showed, on its face, the existence of circumstances making application of the rule [whose waiver is sought] inappropriate." *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 202, 76 S.Ct. 763, 770, 100 L.Ed. 1081 (1956). However, the sweeping and general language of Columbia's waiver request, seeking an "exception to any possible defects in the applications," scarcely constitutes the specific request

contemplated by the Commission. What this court said nearly twenty years ago applies with greater force in today's bureaucratic world:

> When an applicant seeks a waiver of a rule, it must plead with particularity the facts and circumstances which warrant such action. The Commission staff must process annually thousands of applications. It cannot be expected to do research for applicants or to probe the underlying ... economic data.... If the Commission staff were required to assume such a burden, little or nothing would be accomplished.

*Rio Grande Family Radio Fellowship, Inc. v. FCC*, 406 F.2d 664, 666 (D.C.Cir. 1968) (per curiam).

Even if we were to find that the Commission should have read Columbia's letter as a specific request to waive the financial requirements, we would still conclude that such a request does not describe "circumstances making application of the [financial qualifications] rule inappropriate." "The burden is on the applicant seeking waiver ... to plead *specific* facts and circumstances which would make the *general* rule inapplicable." *Tucson Radio, Inc. v. FCC*, 452 F.2d 1380, 1382 (D.C.Cir.1971) (emphasis added). Columbia's waiver request does not demonstrate that special circumstances warrant an exception to FCC rules. Rather, the request disputes the FCC's judgment, reflected in those rules, that "[p]ermitting an applicant without available resources to attempt to arrange or complete financing after grant will prevent currently qualified applicants from promptly constructing proposed systems, and ... would impair the provision of service to the public." *Licensing Space Stations in the Domestic Fixed–Satellite Service*, FCC 85–395, at 8, 58 Rad.Reg.2d (P & F) 1267, 1271 (released August 29, 1985).

Certainly, the Commission was authorized to make this judgment. Congress has stated that "applications for station licenses ... shall set forth such facts as the Commission by regulation may prescribe as to the citizenship, character, and financial, technical and other qualifications

of the applicant." 47 U.S.C. § 308(b) (1982). The Commission need not hold a hearing on applications that it rejects for failing to meet these requirements. *Storer Broadcasting,* 351 U.S. at 202, 205, 76 S.Ct. at 770, 771–72. For the same reason, a waiver request that does no more than challenge financial requirements—and the FCC's determination of the public interest, underlying those requirements—need not receive a hearing or be independently resolved.

We recognize that "a general rule, deemed valid because its overall objectives are in the public interest," may fail to serve that interest if applied inflexibly to parties proposing "a new service that will not undermine the policy [ ] served by the rule." *WAIT Radio v. FCC,* 418 F.2d 1153, 1157 (D.C.Cir.1969). But this is not the case where a proposed new service "will not undermine the policy served" by the FCC's financial qualifications. Rather, Columbia's waiver request sought to change the Commission's policy, notwithstanding that "[t]he very essence of waiver is the assumed validity of the [agency's] general rule." *Id.* at 1158. Under the circumstances, the Commission's rejection of the waiver request, *sub silentio,* when it denied petitioner's satellite application was not improper.

For the reasons stated above, the FCC orders are

*Affirmed.*