Anibal SOTOMAYOR, Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

Family Broadcasting Group, Marsona
Broadcasting Corporation,
Intervenor.

No. 83–1173.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 28, 1983.

Decided Nov. 22, 1983.

Alan W.H. Gourley, Washington, D.C.,
with whom Victor E. Ferrall, Jr. and Linda

K. Smith, Washington, D.C., were on the
brief, for appellant.

David Silberman, Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, and Daniel M. Armstrong, Associate General Counsel, Washington, D.C., were on the brief, for appellees.

Joseph M. Morrissey, Washington, D.C., was on the brief for intervenor, Family Broadcasting Group.

Gary S. Smithwick, Washington, D.C., entered an appearance for intervenor, Marsona Broadcasting Corp.

Before TAMM, WALD and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Anibal Sotomayor applied to the FCC for a license to construct the first radio station to serve Adjuntas, Puerto Rico. He sought to compete under the Commission's fifteen-mile rule, 47 C.F.R. § 73.203(b), with other applicants for the use of a channel assigned to the nearby city of Ponce. That rule permits persons proposing to operate in communities not listed in the FCC Table of Assignments to apply for the use of channels assigned to listed communities within fifteen miles. The staff rejected Sotomayor's application because Adjuntas was listed in the Table of Assignments as a community to which a channel was currently assigned and thus did not come under the literal language of the fifteen-mile rule. The FCC upheld this initial determination and found further that Sotomayor's application failed in any event to meet the FCC's minimum distance requirements, from which no waiver was warranted. Because we find the FCC's refusal either to amend the Table of Assignments or alternatively to waive the literal requirements of the fifteen-mile rule in Sotomayor's case to be within its discretion, we affirm the rejection of Sotomayor's application.

I. BACKGROUND

Sotomayor applied to the FCC in September, 1980, for a license to operate an FM

radio station on Channel 266, recently assigned to Ponce, Puerto Rico. He planned to operate the station in Adjuntas, a small community within fifteen miles of Ponce with no existing local radio service. He sought to invoke the FCC's fifteen-mile rule under which unlisted communities—*i.e.,* those not assigned a channel according to the Commission's Table of Assignments—could apply for use of a channel assigned to a listed community within fifteen miles provided certain conditions were met. 47 C.F.R. § 73.203(b).[1] Although Adjuntas was a listed community, its assigned channel, Channel 275, had been licensed since 1968 to a station in Camuy, 23.2 miles from Adjuntas, under the "twenty-five mile rule," an earlier version of the fifteen-mile rule.[2]

Sotomayor also sought a waiver of the FCC's minimum distance requirements, which are designed to prevent interference between stations on the same or adjacent channels. He claimed that no channel was available to serve Adjuntas other than Channel 266. Because Station WKSA–FM in Isabella, Puerto Rico, operated on a second adjacent channel, Channel 268, FCC regulations required that Sotomayor's sta-

tion be located at least forty miles from the transmitter of the Isabella station. 47 C.F.R. § 73.207(a).[3] However, Sotomayor could locate no site that would serve Adjuntas and yet meet the forty-mile requirement. His proposed site was located thirty-three miles from the Isabella transmitter. J.A. 4. He submitted an engineering study showing that, because of factors such as terrain and transmitting power, the interference resulting from his "short-spaced" site would be no more severe than would result from the location of two facilities operating at the maximum allowed power level and located the prescribed forty miles apart. J.A. 4.

The FCC staff returned Sotomayor's application in December, 1980, as unacceptable for filing, applying literally the requirements of section 73.203(b), which permitted only unlisted communities to remove a channel from a listed community. J.A. 59. Sotomayor petitioned for reconsideration, arguing that the Table of Assignments was incorrect and that the FCC had a common practice of correcting the Table to reflect the use in one community of a station assigned to another community.[4] He also pointed out that no other channel was available to Adjuntas and that the Camuy station was located at such a distance from

1. The "fifteen-mile rule," in relevant part, provided as follows:

(b) A channel assigned to a community listed in the Table of Assignments is available upon application in any unlisted community which is located within . . . 15 miles if the channel is a Class B/C channel, provided no other channel in the listed community has been similarly assigned to another community and provided further that the unlisted community has not already removed a channel from any other listed community.

This provision was recently eliminated by the FCC. In the Matter of the Suburban Community Policy, the Berwick Doctrine, and the De Facto Reallocation Policy, 53 Rad.Reg.2d (P & F) 681, 694–95 (1983), *appeal docketed sub nom. Channel 287, Inc. v. FCC,* No. 83–1520 (D.C.Cir. May 13, 1983). Under the new regulations an applicant may no longer propose to operate in an unlisted community, but must propose to operate in the community to which the channel is assigned. This new rule does not apply, however, to the processing of Sotomayor's application. *See id.* at 698.

2. Camuy had obtained a construction permit in 1967, under the 25 mile rule, and was permitted to retain the channel assignment on a "grandfathered" basis when the FCC decided in 1968 to reduce the mileage limit from 25 to 15 miles. *See* Brief for Appellant at 7. The FCC has not disputed Sotomayor's assertion that the Camuy station does not serve Adjuntas. J.A. 3.

3. The Commission adopted strict mileage separation requirements in 1963, expressly rejecting a "protected contour" system whereby minimum distance requirements were to be based on a case-by-case study of actual terrain conditions and actual transmitting power of the proposed and existing stations. Third Report, Memorandum Opinion and Order in Docket No. 14185, 40 F.C.C. 747, 748–50 (1963).

4. In 1968, the Commission considered and rejected a proposal to amend the Table of Assignments *automatically* to reflect the assignment of a channel to another community under the 15-mile rule. Report and Order in Docket No. 17969, 12 F.C.C.2d 660 (1968). It chose instead to continue to list the "borrowed" channel in

Adjuntas that it did not serve that community. J.A. 64–68. In November, 1981, the Chief of the Broadcast Bureau denied the petition for reconsideration and designated four applications for a comparative hearing. J.A. 117, 125. Sotomayor applied to the full Commission for review of the rejection of his application. All three remaining applicants[5] for Channel 266 filed memoranda in opposition to Sotomayor's request. Before the Commission acted on Sotomayor's application, however, the comparative hearing was held and one of the applicants, Family Broadcasting Group, was granted a construction permit for a station on Channel 266 in an initial decision in September, 1982, by an Administrative Law Judge. J.A. 186. On December 8, 1982, the FCC denied Sotomayor's application for review. *Anibal Sotomayor,* 52 Rad.Reg. (P & F) 1529, 1533 (1982); J.A. 210. The Commission based its denial primarily on its policy of considering requests for correction of the Table of Assignments only in the context of rulemaking, not in the license application process. The Commission added that Sotomayor had failed to justify a waiver of the minimum distance requirements set out in section 73.-207. Sotomayor appeals from the Commission's order.

## II. ISSUES

### A. *The Fifteen-Mile Rule*

In its decision rejecting Sotomayor's application, the FCC explained its policy of considering amendments to the Table of Assignments only in the context of rulemaking proceedings:

> [T]he Commission has a valid interest in ensuring that, when a proceeding is instituted considering the assignment of a channel, all such effects that assignment would have on service to all other communities in the area be taken into account, and that the proceeding be thorough, fair and conclusive. Thus, it is not too harsh to require all affected parties to present their arguments at one time so that others may be put on notice of their interests and so that the Commission may have the greatest flexibility in reaching a reasoned decision.

*Anibal Sotomayor,* 52 Rad.Reg. (P & F) at 1532; J.A. 198. Sotomayor argues that the FCC does not have a consistent policy of considering amendments to the Table of Assignments only in rulemaking proceedings, and that the assertion of this policy to exclude his application exalts form over substance and gives insufficient weight to the importance of providing first service to Adjuntas, a factor that the Commission has a statutory responsibility to consider.[6]

Sotomayor points to an FCC decision issued after its decision in his case, *Hispanic Owners, Inc., et al.,* 53 Rad.Reg.2d (P & F) 1263 (1983), in which the Commission agreed to consider a request to waive the

---

its original community, thus permitting the channel to revert at some later time to the community to which it was originally assigned. There are, according to the undisputed representation of one of the parties to this licensing proceeding, 125 FM channels currently used in communities other than those listed in the Table. J.A. 91.

The Commission has often indicated its willingness to entertain rulemaking petitions to amend the Table, *see, e.g.,* KDHL, Inc. (KDHL–FM), 67 F.C.C.2d 345 (1978); Amite Broadcasting Serv., 18 F.C.C.2d 879 (1969), and has undertaken such rulemaking pursuant to a petition. *See, e.g.,* Notice of Proposed Rulemaking in Docket No. 82–729, 47 Fed.Reg. 50723 (1982); Report and Order in Docket No. 80–95, 48 Rad.Reg.2d (P & F) 1322 (1981).

**5.** Ivanhoe Broadcasting Corp., the successor to Radio Stereo Ivanhoe which had initiated the rulemaking that resulted in the assignment of

Channel 266 to Ponce, withdrew its application in 1982. J.A. 202.

**6.** 47 U.S.C. § 307(b) provides as follows:

(b) Allocation of facilities.

In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the *Commission shall make such distribution* of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.

The Commission has acknowledged that the need for first service to Adjuntas is a major concern of the Commission. Anibal Sotomayor, 52 Rad.Reg. (P & F) 1529, 1532 (1982); J.A. 198.

express requirements of section 73.203(b) in a license application proceeding rather than require a petition for rulemaking. In *Hispanic Owners,* two applicants from Rio Rancho, New Mexico, an unlisted community, each invoked section 73.203(b) in their application for a license to operate a station on a channel assigned to a nearby listed community; one sought to use Channel 277C assigned to Albuquerque, New Mexico, and another sought to use Channel 269A assigned to Bernalillo, New Mexico. These two applications were mutually exclusive because section 73.203(b) provides that no channel may be removed to an unlisted community if that same community has already removed a channel from any listed community.[7] The applicants argued, however, that Rio Rancho actually needed two stations and should be listed as such on the Table of Assignments. The Commission agreed to consider whether to amend the Table of Assignments in the context of the licensing proceedings. Sotomayor argues that this decision undermines the Commission's reliance on a policy of considering requests for amendment or waiver of the fifteen-mile rule only in rulemaking.

In *Hispanic Owners,* however, the FCC found extraordinary the circumstance that each applicant would have been in conformity with the requirements of the rule except for the presence of the other. Thus, neither applicant had any notice of the necessity for rulemaking. Sotomayor's application, by contrast, was patently inconsistent with the express provisions of section 73.203(b); he had fair notice of this inconsistency and therefore of the need for an amendment to the Table. The circumstances which Sotomayor claims warrant an exception to this policy are thus less compelling than the notice problem in *Hispanic Owners.* Even if, as Sotomayor argues, his interest in a radio station did not arise in time either to participate in the rulemaking that resulted in the assignment of Channel 266 to Ponce or to initiate separate rulemaking to amend the Table of Assignments,[8] this does not

compel the FCC to depart from its established preference for deciding these issues in rulemaking. Nor does the acknowledged importance of providing Adjuntas with its first radio service require the Commission to abandon its wholly reasonable choice of rulemaking as the proper method for amending the Table of Assignments.

The Commission's willingness to consider in rulemaking proceedings a proposal to amend the Table of Assignments distinguishes this case from *KCST–TV, Inc. v. FCC,* 699 F.2d 1185 (D.C.Cir.1983). In *KCST,* the Commission had refused to waive a new rule that would remove KCST's "network non-duplication protection" because the station from which protection was sought appeared on an official list of "significantly viewed" stations. The FCC had a policy of never removing a station from the list, and in *KCST* it refused to consider evidence that the station in question was not in fact significantly viewed. Under those circumstances, we held that the FCC had acted arbitrarily in applying the rule and thus removing protection, and was required to take a "hard look" at requests for waiver. In the case before us, the FCC had no policy of refusing to delete communities from the Table, but merely a preference for one method of decisionmaking over another. We see no reason to depart from our usual posture of deference toward an agency choice between rulemaking and adjudication.

### B. Minimum Distance Requirements

Although a determination of whether Sotomayor was entitled to a waiver of the minimum distance requirements is no more necessary to our decision than it was to the FCC's decision, we add a few words to express our dissatisfaction with the manner in which the FCC dealt with this question. The FCC staff had never responded to Sotomayor's request for a waiver from the minimum distance requirements; it appears that Sotomayor had no notice that the full Commission would be considering the waiv-

---

7. *See supra* note 1 (language of § 73.203(b)).

8. *See* Brief for Appellant at 22 & n. 8.

er request and therefore did not fully brief the issue.[9] Nevertheless, in his original application Sotomayor had presented five arguments in support of his request for a waiver.[10] The Commission dismissed as inadequately supported Sotomayor's claim, made in a sworn engineering statement, that no channel was available other than Channel 266, second adjacent to Channel 268, in Isabella. The Commission then dealt with only one of the additional factors—the likelihood of actual interference—and ignored several other factors to which it had given weight in the past in considering requests for waivers.[11] In particular, the Commission failed to address Sotomayor's claim, predicated on the lack of any other available channel, that there was no site available to serve Adjuntas that would meet the Commission's minimum distance requirements for a second adjacent channel. If this claim is true, the Commission's denial of a waiver may effectively deprive Adjuntas of any opportunity in the foreseeable future to obtain local radio service. This disturbing result may be defensible, but it ought certainly to have been defended.

Nevertheless, in light of our conclusion that the FCC could reasonably refuse to consider Sotomayor's request for an amendment to the Table of Assignments in the context of a license application proceeding, the Commission's order is

*Affirmed.*

**9.** Because two other applicants had opposed Sotomayor's application for review in part on the basis of the "short-spacing" problem, Sotomayor summarized his arguments for waiver, while stating his belief that this issue was not properly before the Commission, in a footnote to his supplemental application for review. J.A. 142 n. 2.

**10.** In the sworn engineering statement that accompanied his application, Sotomayor advanced the following reasons in support of his waiver request: (1) No channel other than Channel 266 was available for assignment to Adjuntas; (2) No site that would serve Adjuntas could also be located 40 miles or more from the Isabella station operating on a second adjacent channel, Channel 268; (3) The transmitting power of the proposed Adjuntas station

would place its contour no closer to the Isabella station than would a maximum facility station located 40 miles away; (4) Because of terrain conditions between the two stations, the actual interference would be less severe than for two maximum facility stations spaced the required 40 miles apart; (5) Adjuntas had no existing radio service. J.A. 4.

**11.** *See, e.g.,* Fort Myers Broadcasting Co., 77 F.C.C.2d 863 (1980) (FCC permitted station to move transmitter to site 3 miles short-spaced to provide first service); Patterson Broadcasting Co., 45 Rad.Reg.2d (P & F) 120 (1979) (new station short-spaced to provide first service where no non-short-spaced site available); Williams County Broadcasting System, Inc., 27 Rad.Reg.2d (P & F) 158 (1973) (same).