**NORTH TEXAS MEDIA, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Denton FM Radio, Ltd., Intervenor.**

**No. 84–1511.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1985.

Decided Dec. 6, 1985.

Robert Lewis Thompson, with whom Albert H. Kramer, Washington, D.C., was on brief for appellant.

David Silberman, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief for appellee.

William D. Silva, with whom Forbes W. Blair, Washington, D.C., was on brief for intervenor.

Before ROBINSON, Chief Judge, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge.

North Texas Media, Inc. ("North Texas") appeals from an order of the Federal Communications Commission ("FCC" or "Commission") dismissing its application to construct an FM broadcast facility and to locate stations in both Lake Dallas, and Denton, Texas. The Commission will not accept an application for a new station unless the proposed transmitter site is "separated from other allotments and assignments on the same channel and five adjacent channels by certain minimum distances." [1] North Texas contended that, in order to place the required city-grade signal [2] over both Lake Dallas and Denton, it had no choice but to propose a transmitter site that violated this regulation, and therefore requested a waiver of the mileage spacing

rule. At issue in this case is the Commission's refusal to grant a waiver of the mileage spacing requirements, its consequent dismissal of the North Texas application, and the resulting exclusion of appellant from the comparative hearing process.

We find that the petitioner's challenges to the decision of the Commission are without merit. First, we hold that the FCC's refusal to grant a waiver of its mileage spacing rule, absent a demonstration that no non-short-spaced site exists, is consistent with agency precedent. North Texas clearly failed to make the necessary showing. Second, we hold that the short-spacings proposed by North Texas fall far beyond the purview of the *de minimis* exception to the spacing rule. Finally, we reject petitioner's argument that FCC precedent required that its waiver request be designated for resolution at the comparative hearing.

I. BACKGROUND

In the early 1960's, the FCC considered and adopted a comprehensive scheme for FM channel allocations and assignments. [3] In the course of that rulemaking, the agency weighed the relative merits of two methods to prevent interference among stations. One method considered was the "protected contour system," pursuant to which separation requirements are imposed upon applicants on an *ad hoc* basis. Each proposal must demonstrate that, given the actual facilities and transmitting power of existing stations, its transmitter site will not create objectionable interference. The alternative, denominated the "mileage separation system," operates on the assumption that all stations function with maximum facilities and signal strength and that local variations in topography are irrelevant. Objective mileage separation requirements are thus computed to protect stations from theoretical, rather than actual, interference.

---

1. 47 C.F.R. § 73.207(a) (1984).

2. *See* 47 C.F.R. § 73.315(a) (1984).

3. *Revision of FM Broadcast Rules, First Report and Order,* 40 F.C.C. 662 (1962) (hereinafter *First Report*); *Revision of FM Broadcast Rules,*

*Second Report, Memorandum Opinion and Order,* 40 F.C.C. 720 (1962) (hereinafter *Second Report*); *Revision of FM Broadcast Rules, Third Report, Memorandum Opinion and Order,* 40 F.C.C. 747 (1963) (hereinafter *Third Report*).

Based on a generation of experience, presumably bad, with *ad hoc* determinations of mileage separations for AM radio transmitters, the agency opted for strict adherence to fixed minimum mileage separation rules.[4] Apart from the manifest benefit of efficient, predictable application, the Commission noted that this system has the virtue of flexibility, in that existing licensees retain lee-way to improve facilities and increase signal strength.[5]

This same rulemaking proceeding also established the FM radio service table of assignments that allocated the eighty available FM channels to communities across the nation.[6] All channels were classified A, B or C, depending upon their transmission range, and were allocated to particular communities. Changes in the table may be effected only through a rulemaking proceeding.[7]

In the present case, channel 256, a class C broadcast facility, was assigned to Denton, Texas in April, 1982, after a notice and comment rulemaking proceeding.[8] However, under the Commission's "15-mile" rule [9] in effect at the time of North Texas' application, the allocation of channel 256 to Denton made it available to applicants for both Lake Dallas and Denton. Thus, it was permissible for North Texas to apply for channel 256 and yet to locate a station in nearby unassigned Lake Dallas. While other applicants for channel 256 selected properly spaced sites, North Texas proposed a transmitter location that violated the rule by a significant amount. Its site was short-spaced to two other FM radio stations, 88.3 miles from KTXU (FM) in Paris, Texas, and 141.02 miles from KZBS (FM) in Oklahoma City, Oklahoma, infringements of 16.7 and 8.98 miles, respectively. A waiver was therefore requested.

In an initial decision dated August 9, 1983, the Chief of the FM Branch of the Audio Services Division of the Mass Media Bureau denied the waiver request on the basis of *Trend Broadcasting, Inc.*[10] In that decision the Commission held that it would waive the mileage separation rule only if the waiver request were supported by a showing that no suitable non-short-spaced sites were available. Here, several other applicants had specified properly spaced sites, precluding any possibility that North Texas could make the required showing.[11]

North Texas petitioned for reconsideration, maintaining that FCC precedent mandated a waiver, and that, at a minimum, its request should be fully aired in the comparative hearing at which the license would be awarded. The request for reconsideration was denied and appellant's application dismissed on December 21, 1983. The Commission subsequently declined to overturn the decision of its staff, and this petition for review followed.

## II. ANALYSIS

### A. *Application and Waiver of the Mileage Separation Rule*

This court recently described the heavy burden of a litigant who challenges an agency's refusal to waive one of its rules:

---

4. *See First Report,* 40 F.C.C. at 666–67 (1962); *Communications Investment Corp. v. FCC,* 641 F.2d 954, 957 n. 3 (D.C.Cir.1981).

5. *See First Report,* 40 F.C.C. at 673–74; *Third Report,* 40 F.C.C. at 750–51.

6. *See* 47 C.F.R. § 73.202(b) (1984).

7. *See* 47 C.F.R. § 1.420 (1984).

8. *See FM Broadcast Station in Denton, Texas; Changes Made in Table of Assignments (BC Docket 81–772),* 47 Fed.Reg. 18,902 (1982).

9. At the time of the proceedings in dispute, section 73.203(b) of the Commission's rules per-

mitted applicants to apply for the use of an FM channel either in the community to which it had been assigned in the FM table of assignments, or in any other community within 15 miles of the assigned community, provided the requested community was not listed in the FM table. The FCC eliminated this rule in *The Suburban Community Policy, the Berwick Doctrine, and the De Facto Reallocation Policy,* 93 F.C.C.2d 436 (1983), *petition for review pending sub nom. Beaufort County Broadcasting Co. v. FCC,* Nos. 84–1384, 84–1432 (D.C.Cir.).

10. 18 F.C.C.2d 749 (1969).

11. *See Amherst Broadcasting, Inc.,* 44 RAD.REG.2D (P & F) 1548, 1552 (1979).

An applicant for a waiver not only bears the burden of convincing the agency that it should depart from the rules, but, on judicial appeal, the applicant must show that the agency's reasons for declining the waiver were "so insubstantial as to render that denial an abuse of discretion." [12]

In the present case, the FCC decision is fully grounded in explicit agency precedent and practice and must therefore be affirmed.

Since the time of the major FM rulemaking in the early 1960's, the Commission has shown some leniency in the application of its mileage spacing rules to existing stations; [13] but the FCC has, with only a few tightly contained exceptions, refused to permit the licensing of new stations that violate the short-spacing rule. [14] This policy flows logically from the choice of the mileage separation method to protect against mutual interference.

 The FCC has consistently refused to waive the mileage separation rule unless no non-short-spaced sites are available. [15] An applicant seeking a waiver must therefore make a threshold showing, using legitimate engineering evidence, that no proper-ly spaced location is obtainable. The FCC was entirely justified in finding that North Texas had failed to demonstrate that no properly spaced site was available to serve both Lake Dallas and Denton. The record [16] demonstrates that North Texas' entire showing on this matter consisted of a flat assertion by its consulting engineer that the short-spacings were "unavoidable." [17] No supporting engineering data were submitted. [18] As this court has stated, "[t]he applicant for waiver must ... adduce concrete support, preferably documentary." [19] The North Texas showing was manifestly inadequate.

One recent FCC decision that initially appeared troublesome was, in fact, only an apparent deviation from the above-described policies. In *Sanibel Broadcasting Co.,* [20] the Commission staff improperly waived a short-spacing of 3.74 miles with an existing station, WVFM of Lakeland, Florida, reasoning that no actual interference would be created. [21] Shortly thereafter, WVFM filed pleadings with the Administrative Law Judge ("ALJ") for the comparative hearing, requesting that the short-spacing issue be reconsidered at the hearing. This request was supported by the agency's Mass Media Bureau, which

**12.** *Thomas Radio Co. v. FCC,* 716 F.2d 921, 924 (D.C.Cir.1983) (quoting *WAIT Radio v. FCC,* 459 F.2d 1203, 1207 (D.C.Cir.), *cert. denied,* 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972)).

**13.** *See, e.g., Fort Myers Broadcasting Co.,* 77 F.C. C.2d 863 (1980); *Williams County Broadcasting Systems, Inc.,* 27 Rad.Reg.2d (P & F) 158 (1973).

**14.** *See Basic Media, Ltd. v. FCC,* 559 F.2d 830, 834 (D.C.Cir.1977).

**15.** *See Trend Broadcasting, Inc.,* 18 F.C.C.2d 749 (1969). No such threshold showing is required when the spacing violation is *de minimis, see infra text* at notes 27–31, or when the application presents an unusual situation, *see Oswego-Jefferson Broadcasting, Inc.,* 49 Fed.Reg. 45,251 (1984) (2.9 mile spacing violation waived as to a Canadian station pursuant to the terms of a Canadian-U.S. working agreement); *Wilk Broadcasting,* 49 Fed.Reg. 40,208 (1984) (three mile spacing violation waived because the application was acceptable under the rules in effect at the time of its filing); *Pleasant Broadcasters,* 11 Rad.Reg.2d (P & F) 1001 (1967) (alleged two mile spacing violation deemed irrelevant when

based only upon a possible future move by an existing station).

**16.** Both parties make arguments pertinent to this point founded on extra-record evidence. We are, of course, unable to consider such evidence. *See Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 284 (D.C.Cir.1981).

**17.** Joint Appendix ("J.A.") 34.

**18.** Appellant also directs the court's attention to a second engineering statement on this point; but, as we read that document, it purports only to demonstrate that the proposed short-spacing would cause no actual interference with existing stations. (J.A. 37A).

**19.** *ICBC Corp. v. FCC,* 716 F.2d 926, 929 (D.C.Cir. 1983).

**20.** 50 Fed.Reg. 6,999 (1985).

**21.** 47 C.F.R. § 73.207 (1984) mandates that intermediate frequencies of the sort involved in the *Sanibel* proceeding be spaced at least thirty miles apart.

pointed out that the waiver applicant had not submitted information on the availability of alternative transmitter sites. The Bureau conceded that the waiver request had not been "fully considered in the *Hearing Designation Order* and that that order did not contain a reasoned analysis of the ... waiver request." [22] As a result the ALJ designated the waiver issue for resolution at the comparative hearing. The initial improvident grant of a waiver in this case, now described as an error, does not deprive the agency of authority to require future applicants to meet certain standards in order to obtain such a waiver.

B. *Application of the "First Local Service" Criterion*

■ Although it was perfectly proper for North Texas to select Lake Dallas as a community of license, such choice did not excuse the applicant from compliance with the FCC's short-spacing rule. North Texas, however, makes much of its alleged entitlement to preferential treatment under section 307(b) of the Federal Communications Act. Section 307(b) of the Act provides that, in considering applications for radio licenses, the Commission must provide a fair, efficient, and equitable distribution of radio service to as many communities as possible.[23] In making such a determination, the Commission is guided by three principal objectives,[24] only one of which is of decisional significance here— the provision of service of local origin to as many communities as possible. North Tex-

as asserts that the local service criterion should weigh decisively in favor of its proposal, since it would provide first local service to Lake Dallas, or should, at the very least, militate in favor of a waiver of the mileage spacing rule.

■ We disagree. The FCC allocated channel 256 to Denton, Texas after a notice and comment proceeding during which 307(b) benefits were considered and a specific site restriction was imposed in order "to meet spacing requirements to KTXU in Paris, Texas, KLVV in Dallas, Texas, and KPLX in Fort Worth, Texas." [25] In addition, the Commission found, in the context of the present waiver request, that the 307(b) virtues of appellant's application were outweighed by "the strong policy in favor of maintaining the requirements of appropriate spacing as a means of allocating stations." [26] Finally, and most significantly, it is absolutely clear that, under normal circumstances, in order for an applicant for a new FM broadcast facility even to be considered for a waiver of the mileage separation rule, a threshold showing must be made that no properly spaced site is available. Section 307(b) considerations do not obviate this requirement.

C. *Application of the De Minimis Exception*

■ North Texas also alleges that it was entitled to a waiver because the spacing violations in question were *de minimis.*[27] First, we note that North Texas failed

**22.** *Sanibel Broadcasting Co.,* FCC 85M–1709 (April 18, 1985).

**23.** 47 U.S.C. § 307(b) (1982). Section 307(b) provides in pertinent part:
In considering applications for licenses ... when and insofar as there is a demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.

**24.** *First Report,* 40 F.C.C. 662, 664 (1962). The other two agency objectives are: (1) the provision of some service to all of the nation or as much as possible; and (2) the provision of as

many program choices to as many listeners as possible.

**25.** *FM Broadcast Station in Denton, Texas; Changes Made in Table of Assignments (BC Docket 81–772),* 47 Fed.Reg. 18,902 (1982).

**26.** *In re Application of North Texas Media, Inc., Memorandum Opinion and Order,* FCC 84–456 (October 5, 1984).

**27.** North Texas has attempted to characterize its argument that no interference would be created by its proposed transmitter site as an assertion that the short spacings involved were *de minimis.* This characterization is clearly misleading; the FM rulemaking described above evinces the FCC's adamant refusal to grant waivers solely

to assert this claim before the Commission and thus is precluded from raising it here.[28] Second, the spacing violations inherent in appellant's proposal are far outside the range encompassed by the *de minimis* exception.[29] In fact, the North Texas spacing violation of 16.7 miles is more than double that of any prior FCC waiver based on the *de minimis* rationale.[30] The proposed transmitter site was thus substantially beyond the conceivable range of a *de minimis* violation as delimited by agency precedent.[31]

### D. Requirement of a Comparative Hearing

Finally, North Texas argues that the FCC's failure to designate the waiver issue for decision at the comparative hearing was an unexplained and impermissible departure from agency precedent. In fact, however, in the FM radio context, the FCC's policy is to designate a short-spacing issue for resolution at the hearing "only when an applicant can raise a substantial question of fact concerning its opponents' non-short-spaced sites."[32] North Texas not only failed to demonstrate that no properly spaced site was available to serve both

Lake Dallas and Denton, but also failed to raise any question about the propriety of its opponents' transmitter sites.[33]

Appellant's reliance on the FCC's television service policy, pursuant to which applications for the waiver of mileage separation rules are automatically considered at the comparative hearing, is misplaced. The FCC adheres to a long standing practice of examining requests for waiver of the FM spacing rules prior to the comparative hearing at which the license is awarded. North Texas had notice of this policy, and all applicants for FM broadcast facilities were subject to similar requirements. No unfair distinctions were made between similarly situated applicants. In addition, the FCC has a rational basis for distinguishing between waiver requests in FM radio and those in television. Far fewer television channels than FM radio facilities are subject to comparative proceedings, making it feasible to consider at the hearing all requests for waiver of the spacing rules in the former service. We therefore hold that the Commission's refusal to designate North Texas' waiver request for resolution at the hearing was entirely consistent with agency precedent.[34]

upon the basis of "no actual interference." *See Sotomayor v. FCC,* 721 F.2d 1408, 1409 n. 3 (D.C.Cir.1983).

**28.** *Washington Association for Television and Children v. FCC,* 712 F.2d 677, 680–81 (D.C.Cir. 1983).

**29.** *Patterson Broadcasting Co.,* 45 Rad.Reg.2d (P & F) 120 (1979), *affirmed mem. sub nom. Drexel Hill Associates, Inc. v. FCC,* 644 F.2d 39 (D.C.Cir. 1982) (one mile spacing violation *de minimis* ); *Wilk Broadcasting,* 49 Fed.Reg. 40,208 (1984) (0.9 mile spacing violation *de minimis* ); *Temple Broadcasting Co.,* 49 Fed.Reg. 15,620 (1984) (one mile spacing violation *de minimis* ); *Pleasant Broadcasters,* 11 Rad.Reg.2d (P & F) 1001 (1967) (two mile spacing violation *de minimis* ).

**30.** *See KISR (FM) Megamedia,* 67 F.C.C.2d 1527 (1978) (a short spacing of seven miles waived when the applicant also demonstrated that no non-short-spaced site was available).

**31.** We pause here to note that it is exceedingly difficult for the court to determine the outer limits of the *de minimis* exception. In a closer case, we would have felt compelled to remand

the matter to the agency for an elaboration of its meaning. When an appropriate moment arises, a clarification of this point would be helpful for the purposes of informing future applicants and facilitating judicial review.

**32.** *Clearlake Broadcasting Co.,* 47 Fed.Reg. 47,-931 (1982).

**33.** The FCC did designate a hearing issue pertaining to a spacing violation in an FM radio proceeding in *Tamarack Investment Corp.,* 49 Fed.Reg. 50,108 (1984). However, in that case the short-spacing in question was as to a *proposed* allocation of another channel in an ongoing rulemaking proceeding. No final determination of short-spacing was possible until that latter rulemaking reached its conclusion; thus, the issue was designated for resolution at the hearing.

**34.** North Texas also contended that it was entitled to a waiver because its proposed mileage spacings would shortly have become acceptable under new FM rules enacted in the agency's *Modification of FM Broadcast Station Rules to Increase the Availability of Commercial FM*

### III. CONCLUSION

We find that the FCC's refusal to waive its mileage separation rule and its consequent dismissal of the North Texas application for the FM broadcast facility on channel 256 were fully consistent with agency precedent. We therefore affirm the Commission's decision.

*So Ordered.*

*Broadcast Assignments, Report and Order in Docket 80–90,* 94 F.C.C.2d 152 (1983), *on reconsideration,* 97 F.C.C.2d 279 (1984). This rulemaking created a new class of FM radio facilities, C–1, an intermediate rank between class B and C stations, and amended the mileage separations to incorporate stations in the new class. However, the rulemaking did not modify the allotment structure embodied in the table of assignments. North Texas could have relied on these new rules to validate its mileage separation from other stations only had it invoked the rulemaking process to reclassify channel 256 as C–1 rather than C. Further, because of the abolition of the "15-mile" rule in 1983, prior to the effective date of the *Report and Order in Docket 80–90,* a rulemaking procedure would also have been required to reassign the channel from Denton to Lake Dallas. Finally, the FCC gave specific notice in its *Report and Order* that, before the effective date of the new FM rules, any applications which did not conform to the old rules would be returned. 94 F.C.C.2d at 181–82.