**RED ROCK BROADCASTING, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

Nos. 92–1541, 95–1338.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 19, 1995.

Decided Sept. 13, 1996.

Barry D. Wood, Washington, DC, with whom Mark A. Brinton was on the brief, argued the cause for appellant Red Rock Broadcasting, Inc.

Gregory M. Christopher, Counsel, Federal Communications Commission ("FCC"), Washington, DC, with whom William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel, FCC, were on the brief, argued the cause for appellee. Roberta L. Cook, Counsel, FCC, entered an appearance.

Before SILBERMAN and RANDOLPH, Circuit Judges, and BUCKLEY,* Senior Circuit Judge.

Opinion for the court filed by Senior Circuit Judge BUCKLEY.

BUCKLEY, Senior Circuit Judge:

Appellant Red Rock Broadcasting seeks review of the Federal Communications Commission's decision to return Red Rock's application for a new FM radio station as unacceptable for filing. We find that the FCC did not abuse its discretion in refusing to grant Red Rock a waiver of its minimum spacing rules; and we hold that, under the agency's "hard look" procedures, the FCC properly returned Red Rock's application for noncompliance with the filing rules.

## I. Background

### A. Regulatory Framework

Anticipating a flood of applications for new FM station licenses, in 1985 the FCC adopted application processing procedures that were designed to expedite the initiation of FM service and to increase certainty and efficiency in the licensing process. *See Processing of FM and TV Broadcast Applications, Report & Order,* 50 Fed.Reg. 19,936, *et seq.* ("*FM Processing Rules*"). Under these "hard look" procedures, the FCC staff conducts a preliminary review of a new application to determine whether it is "substantially complete" in accordance with criteria set forth in Appendix D to the *FM Processing Rules* ("Appendix D"). *See id.* at 19,945–46. Applications that are not in substantial compliance with these criteria when filed are returned as unacceptable for filing. *Id.* at 19,940. Applications that are acceptable are listed in publicly released "Notices of Tenderability." *Id.* at 19,941. Applicants then have 30 days to amend or perfect their applications as a matter of right. *Id.*

Following the 30–day amendment period, the FCC studies applications for "acceptability," which it defines as "compliance with the technical requirements for FM facilities," *id.,* as set forth in Appendix D. Applications that are "patently not in accordance with the FCC rules, regulations, or other requirements, unless accompanied by an appropriate request for waiver, will be considered defective and will not be accepted for filing...." 47 C.F.R. § 73.3566(a). Those applications that are not accepted for filing are returned. 50 Fed.Reg. at 19,941. Applications that are resubmitted with curative amendments after the 30–day period will not receive *nunc pro tunc* status because "[t]o permit curative

amendments after that period poses too great a threat to the orderly functioning of our new processing procedures." *Id.*

Appendix D requires, *inter alia,* that the applicant submit the geographic coordinates of its proposed transmitter site. *Id.* at 19,-945. This information allows the Commission to determine whether the site complies with its mileage separation rules, which require that FM transmitters be located at specified minimum distances from neighboring FM broadcast stations in order to prevent interference. *North Texas Media, Inc. v. FCC,* 778 F.2d 28, 30–31 (D.C.Cir.1985). A site that does not meet the minimum separation requirement is "short spaced." The amount of separation depends on the classes of the affected stations. *See* 47 C.F.R. § 73.207. Stations are primarily classified as A, B, or C, depending on their transmission range. *North Texas Media,* 778 F.2d at 31. Class A stations have the weakest power and thus the smallest area of coverage, while Class C stations have the largest. *See* 47 C.F.R. § 73.207. Class C is divided in turn into three classes, C1, C2, and C3, the first being the strongest. *Id.*

## B. The Applications at Issue

Having been unsuccessful in a previous attempt to find a qualified licensee for FM channel 259C in St. George, Utah, the FCC announced, on May 25, 1988, that it would again accept applications for that allotment. *Notice of FM Broadcast Allotment "First–Come/First–Serve" Filing Status,* Report No. FCFS–8. On June 1, the FCC received an application from EAR, Inc., which proposed a fully spaced transmitter site. On June 2, Red Rock Broadcasting, Inc., submitted an application for a site that fell 1.16 kilometers short of the 209 kilometers required between it and Station KGMN in Kingman, Arizona. KGMN was a class A station that had been authorized to operate as a Class C1 facility but had not upgraded its facilities to do so. Red Rock's proposal was short spaced only with respect to this unused C1 allotment. With its application, Red Rock submitted a request for a waiver of the spacing rules, setting forth certain reasons why the waiver would serve the public interest. Red Rock

also noted that KGMN had not taken any steps to operate as a C1 facility. KGMN did not file an objection to Red Rock's application. Red Rock's and EAR's mutually exclusive applications were accepted for tender on August 8, 1988.

The following succession of events involving Red Rock, EAR, and KGMN led to this appeal. On January 5, 1989, the FAA issued an aeronautical study which indicated that construction of EAR's proposed antenna tower would be a hazard to air navigation. On May 10, the FCC's Mass Media Bureau ("Bureau") denied Red Rock's waiver request and returned its application. A month later, EAR's application was accepted for filing. Red Rock petitioned for reconsideration of the denial of its waiver on June 15, and on July 5, it filed a petition to deny EAR's application. In both petitions, Red Rock called attention to the FAA's adverse determination regarding EAR's proposed antenna site and requested that its own application be reinstated. On July 21, EAR filed an amendment to its application, which proposed a new transmitter site to cure the air navigation problem.

On September 25, 1989, KGMN applied for a permit to modify its facilities as authorized by the FCC and noted that it had decided to operate as a Class C2, rather than as a Class C1, facility. The application was granted. In July 1990, while its petition for reconsideration was still pending, Red Rock filed an "Information Statement" to inform the FCC of the significance of KGMN's modification: "[E]ven the 'de minimus' [*sic*] short-spacing which once existed has been wholly removed as a factor in the consideration of Red Rock's proposal." *In re Red Rock Broadcasting, Inc., Information Statement* at 3 (July 19, 1990). Red Rock also maintained that, "at the time the Commission dismissed Red Rock's proposal, the EAR application did not have an acceptable site proposal" due to the FAA's air hazard determination; thus, "the Commission unknowingly but mistakenly assumed [EAR] had a fully-spaced site." *Id.* at 2.

The Bureau denied Red Rock's petition for reconsideration and its petition to deny EAR's application. Letter from Larry D.

Eads, Chief, Audio Services Division, FCC Mass Media Bureau, to J. Dominic Monahan, Esq. (Dec. 27, 1990). It also declined to consider Red Rock's "Information Statement," treating it as an untimely amendment. *Id.* at 1 n. 1. The Commission denied Red Rock's subsequent application for review of the denial of its petition for reconsideration. *In re Red Rock Broadcasting, Inc., Memorandum Opinion & Order,* 7 F.C.C.R. 5947 (1992) ("*First Order*").

Red Rock appealed that decision and, in 1993, we granted the FCC's motion for voluntary remand so that the agency could address Red Rock's arguments and the basis for its decision more fully. The Commission released its second decision on June 1, 1995, in which it affirmed its initial conclusions. *In re Red Rock Broadcasting, Inc., Memorandum Opinion & Order,* 10 F.C.C.R. 5990 (1995) ("*Second Order*"). Red Rock appeals both decisions.

## II. DISCUSSION

### A. Short–Spacing Waiver

■ "The Commission need not grant a waiver of its Rules unless an application therefor sets out 'adequate reasons why the Rules should be waived....'" *Rio Grande Family Radio Fellowship, Inc. v. FCC,* 406 F.2d 664, 666 (D.C.Cir.1968) (per curiam) (quoting *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 205, 76 S.Ct. 763, 772, 100 L.Ed. 1081 (1956)). The FCC has explained that the

> spacing requirements presumptively serve the public interest, and applicants seeking waivers to operate from short-spaced sites are required to demonstrate that the public interest will be better served by a waiver in the circumstances presented than by following the terms of the rule.

*In re Caloosa Television Corp.,* 3 F.C.C.R. 3656, 3657 (1988), *on recon.,* 4 F.C.C.R. 4762 (1989); *accord Nelson County Broadcasting Co.,* 64 F.C.C.2d 932, 933 (1977). Further, waiver applicants must make a threshold showing that no fully spaced sites are available. *Kenter Broadcasting Co.,* 62 Rad. Reg.2d (P & F) 1573, 1577 (1986), *aff'd,* 816

F.2d 8 (D.C.Cir.1987) (table); *see also North Texas Media,* 778 F.2d at 32.

■ If the short spacing is *de minimis, i.e.,* less than one mile (1.6 km), an applicant such as Red Rock does not have to make this threshold showing; it must, however, be able to explain why a waiver is in the public interest. *Kenter Broadcasting,* 62 Rad. Reg.2d at 1577 n. 9; *North Texas Media,* 778 F.2d at 32 n. 15. A party challenging the FCC's refusal to grant a waiver

> not only bears the burden of convincing the agency that it should depart from the rules, but, on judicial appeal, the applicant must show that the agency's reasons for declining the waiver were so insubstantial as to render that denial an abuse of discretion.

*Id.* at 31–32 (internal quotation marks and citation omitted).

In its waiver request, Red Rock advanced three public interest considerations in support of a waiver: (1) the proposed FM service would reach nearly 33,000 people; (2) previous unsuccessful applicants for the channel had encountered difficulty in locating fully spaced sites while conforming with the FCC's other requirements; and (3) the notice announcing the availability of the channel provided a short application period that hampered site selection. Request for Waiver of Section 73.207 of the Commission's Rules at 2, *reprinted at* Joint Appendix ("J.A.") 22–23. Red Rock also called attention to KGMN's failure to use its C1 allotment, which Red Rock said exhibited a lack of good faith on KGMN's part. *Id.* at 22 n. 1; Engineering Exhibits in Support of Application for Construction Permit at 9, *reprinted at* J.A. 31, 41.

In its initial response to the waiver application, the Bureau did not address Red Rock's public interest showing. Instead, it merely stated that, "[s]ince the competing application for EAR, Inc. ... proposed a fully spaced site, you have failed to show that fully spaced sites do not exist." Letter from Dennis Williams, Chief, FM Branch FCC Mass Media Bureau, to Red Rock Broadcasting, Inc. (May 10, 1989), *reprinted at* J.A. 78–79. In reviewing Red Rock's petition for reconsideration, however, the Bureau agreed

that because Red Rock's short spacing was *de minimis,* it was not required to show that no fully spaced site was available. Letter from Larry D. Eads, Chief, Audio Services Division, FCC Mass Media Bureau, to J. Dominic Monahan, Esq. at 2 (Dec. 27, 1990), *reprinted at* J.A. 107, 108. The Bureau concluded, however, that Red Rock had failed to make a sufficient public interest showing. *Id.* at 3. It noted that

> an applicant's claim that operation from a short-spaced site will permit the applicant to provide a new service to a given population, will be of no consequence if the new area to be served is presently neither unserved or underserved.... Commission records indicated that St. George is currently served by 2 AM stations, one commercial FM station and one noncommercial, educational FM station. Therefore, we find that Red Rock has failed to make a compelling showing in support of this aspect of its request for waiver. Secondly, we do not find Red Rock's argument concerning a lack of time to locate a fully-spaced site to be a sufficient public interest showing. EAR was operating under the same time constraint....

*Id.*

In its *First Order,* the Commission found "no reason to disturb the [Bureau's] ruling." 7 F.C.C.R. at 5948. It also considered and rejected an additional factor advanced by Red Rock, namely, that granting the waiver would provide the FCC with a choice of applicants. The agency rejected the suggestion because "Red Rock's proposal was defective and its consideration would be inconsistent with the principles underlying the 'hard look' policy." *Id.*

In its *Second Order,* the FCC again affirmed that Red Rock had not made a sufficient public interest showing. Before arriving at this conclusion, it stated:

> In determining whether to grant a *de minimis* waiver request, we have summarized the public interest factors we will consider as follows:
>
> > (i) the unsuitability of the existing site in technical terms or in terms of a licensee's inability to reach areas containing a significant number of viewers who lack

service, a network service, or "independent" service; (ii) the magnitude of the short-spacing created; (iii) the aeronautical and environmental benefits and drawbacks of locating a tower in a particular area; (iv) the concerns, if any, expressed by the licensee(s) to which the short-spacing would result; and (v) the extent to which the licensee obtained its license knowing there were spacing restraints imposed in a rulemaking. *Caloosa Television Corp.,* 3 FCC Rcd 3656 (1988), *on recon.* 4 FCC Rcd 4762 (1989) (Footnote deleted).

*Second Order,* 10 F.C.C.R. at 5990 (quoting *R & L Broadcasters,* 7 F.C.C.R. 5551, 5553 (1992)).

One of Red Rock's principal contentions on appeal is that the FCC arbitrarily and capriciously limited the public interest factors that it will consider to the five listed above (*"Caloosa"* factors). We disagree. The FCC acknowledged that it has considered other factors in *de minimis* situations, but it found that none of them were relevant here. *See Second Order,* 10 F.C.C.R. at 5991 & n. 2. But more to the point, because we conclude that the FCC has adequately addressed the public interest considerations advanced by Red Rock in the proceedings before the agency, Red Rock's claim that the *Caloosa* factors are inapplicable here because they were taken from a non-*de minimis* waiver case involving television rather than radio is simply irrelevant.

 We turn now to the FCC's disposition of the public interest considerations that Red Rock claimed in its waiver request as well as others that it advanced before the Commission. In evaluating whether the FCC's reasons for declining to grant the waiver were so insubstantial as to render the denial an abuse of discretion, we emphasize "that the role of the court is not to determine the public interest, but to determine whether the agency's delineation is contrary to law." *WAIT Radio v. FCC,* 459 F.2d 1203, 1207 (D.C.Cir.1972). Given this standard, we cannot say that the FCC abused its discretion.

In response to Red Rock's claim that its station would reach nearly 33,000 people, the

Commission observed that Red Rock had not shown that it would be offering service to an area that was either unserved or underserved. *Second Order,* 10 F.C.C.R. at 5991. Contrary to Red Rock's assertion, the FCC did not state that provision of service to unserved or underserved areas is a prerequisite to a waiver. It merely noted that when an applicant cites "service" as a factor supporting a waiver, "the test ... is whether the proposal will provide service to listeners who currently lack it." *Id.* As the FCC points out, every applicant for a new station will provide a new service to listeners within its reach. Therefore, we cannot fault the Commission for discounting the public interest value of a new station that does not reach areas that currently have little or no service. *Cf. WAIT Radio,* 459 F.2d at 1209 (holding Commission may take into account, in considering waiver of clear channel rules, whether applicant would offer service to an area lacking it).

The Commission dismissed KGMN's failure to use its C1 allotment with the statement that "the fact that Station KGMN ... neither pursued its upgrade nor complained of the short-spacing—does not constitute a public interest showing which would warrant a grant of Red Rock's waiver request." *Second Order,* 10 F.C.C.R. at 5991. This response is undeniably terse; but Red Rock has not explained the relationship between KGMN's failure to upgrade its facilities and the public interest that would be served by granting its waiver request. Under the circumstances, we cannot find that the FCC's summary rejection of the suggestion was an abuse of discretion.

It appears that, in the proceedings before the Commission, Red Rock also called attention to the fact that KGMN had not objected to its application. The FCC acknowledged that the failure of a short-spaced licensee to object is a factor to be

> considered in evaluating the sufficiency of an applicant's public interest showing[,] ... where ... an applicant has failed to make an affirmative demonstration that a grant of its waiver request would be in the public interest, the absence of opposition to

its proposal does not in itself justify a grant.

*Second Order,* 10 F.C.C.R. at 5991. Again, we see no reason to question the Commission's judgment in treating the silence of a short-spaced licensee as a makeweight consideration rather than as an independent basis for finding that the grant of a waiver would serve the public interest.

Finally, the FCC stated that "[a]lthough retention of Red Rock's application would give the Commission a choice of applicants, this is not one of the public interest factors that the Commission will consider in evaluating waiver requests." 10 F.C.C.R. at 5991 (citations omitted). It is quite true, as Red Rock contends, that the FCC was once ready to accept curative amendments in the interest of enlarging the pool of applicants:

> Since the public interest is best served by having as many qualified applicants as possible competing for each broadcasting facility, it has long been Commission policy to permit an applicant to remove a disqualifying factor through amendment during hearing.

*In re Azalea Corp.,* 31 F.C.C.2d 561, 563 (1971); *accord Gilbert Broadcasting Corp.,* 91 F.C.C.2d 450, 462 (1982). The FCC's interest in increasing the pool of applicants has been superseded by the FCC's hard look policy, which "place[s] greater emphasis on providing service to the public in the most efficient, expeditious manner possible." *In re James C. Rogers III,* 2 F.C.C.R. 5536, 5537 (1987). Because the grant of a waiver will always add an additional applicant to the pool, no matter how flawed the proposal, we cannot say that the FCC abused its discretion in finding that the preservation of a choice of applicants was not a sufficient public interest to support a waiver of the spacing rules.

Red Rock cites various FCC decisions to show that the Commission has granted waivers for much larger short spacings. Red Rock does not, however, argue that the public interest considerations in those cases, or their factual context, are applicable here. As we have noted on more than one occasion, the Commission has shown some leniency in the application of its mileage spacing

rules to existing stations; but the FCC has, with only a few tightly contained exceptions, refused to permit the licensing of new stations that violate the short-spacing rule.

*North Texas Media,* 778 F.2d at 32 (citations omitted). In situations such as the one before us, where one applicant for a new station has proposed a fully spaced site while another applicant requires a waiver of the spacing rules, the FCC has declined to find that a waiver would be in the public interest. *See In re Evans Broadcasting,* 5 F.C.C.R. 1675, 1676 (Audio Servs. Div.1990) ("it would be difficult to grant such a waiver in the public interest when other applicants propose to provide the same service without violating any Commission rule"); *Eugene Walton,* 6 F.C.C.R. 6071, 6074 (Rev. Bd.1991) (waiver denied "in light of the fact that the remaining applicants specified non-short-spaced sites, and that no public interest showing sufficient to support a waiver request was filed"), *aff'd,* 7 F.C.C.R. 3237 (1992), *on recon.,* 7 F.C.C.R. 6038 (1992). In light of this precedent, it cannot be said that the FCC has departed from its past practice in this case.

At various points in its briefs, Red Rock suggests that public interest considerations favor its application over EAR's. *See* Brief for Appellant at 21 ("Red Rock ... showed that its site would be superior in terms of service"); 28 (grant of waiver "would have permitted a substantial *gain* in service as compared with EAR's proposal") (emphasis in original); Reply Brief for Appellant at 5–7 (FCC should have considered that Red Rock would provide service to more people than would EAR). These arguments might well be persuasive if its application had been accepted and then considered in a comparative hearing. The FCC, however, has a "long standing practice of examining requests for waiver of the FM spacing rules prior to the comparative hearing at which the license is awarded." *North Texas Media,* 778 F.2d at 34.

■ Red Rock makes several additional public interest claims. Because these are advanced for the first time in these proceedings, however, we do not reach them. *See id.* at 33–34 (appellant precluded from raising on appeal any claim that it failed to assert before Commission).

As Red Rock has failed to establish that the Commission's dismissal of its public interest claims was an abuse of discretion, we affirm the denial of its waiver request.

## B. The Hard Look Procedures

Because it found that a waiver of the spacing rules in this case would not serve the public interest, the FCC was required by its hard look procedures to return Red Rock's application as unacceptable. *See Malkan FM Assocs. v. FCC,* 935 F.2d 1313, 1319–20 (D.C.Cir.1991) (upholding FCC dismissal of application because of non-compliance with technical criteria concerning heighth of antenna). The hard look policy focuses on the acceptability of applications at the end of the 30–day amendment-as-of-right period. At that moment, the FCC takes a figurative "snapshot" of the filed applications to determine their acceptability; those that are not in compliance with the requirements detailed in Appendix D are returned. Because Red Rock's application was not acceptable as of the cut-off date, it was not entitled, under the hard look rules, to file a curative amendment to correct the defect. *See* 50 Fed.Reg. at 19,946.

■ Red Rock insists that specification of a fully spaced site is not required by Appendix D and, accordingly, does not bear on the acceptability of an application. That is simply not the case. The Appendix states, quite explicitly, that "[i]n the commercial FM service, spacing determines acceptability of an application where mutual exclusivity exists with respect to a given allocation...." 50 Fed.Reg. at 19,945. In the alternative, Red Rock contends that its application should have been reinstated once it was clear that KGMN's decision to operate a C2 rather than a C1 facility eliminated the short-spacing problem.

■ We may require the FCC to reinstate an application only if,

based upon the entire record, the agency's decision was not a reasonable exercise of procedural discretion. We will uphold the decision if we can discern a reasoned path

from the facts and considerations before the Commission to the decision it reached. *Russian River Vintage Broadcasting v. FCC,* 5 F.3d 1518, 1521 (D.C.Cir.1993) (internal quotation marks omitted). In upholding the Bureau's refusal to reinstate Red Rock's application, the FCC explained that pursuant to the Commission's "hard look" procedures,

> the benchmark for determining the acceptability for filing of an application is the last date for filing amendments as a matter of right. As of that, [*sic*] Red Rock's application was short-spaced and thus not acceptable for filing, whereas EAR's application was fully-spaced and acceptable for filing. Moreover, Red Rock's amendment unlike EAR's did not fall within the "good cause" exception ... for the acceptance of late-filed amendments.

*First Order,* 7 F.C.C.R. at 5948. The FCC affirmed this holding on review. *Second Order,* 10 F.C.C.R. at 5991. Red Rock also claims that the FCC acted arbitrarily by treating Red Rock's information statement as an untimely amendment, while accepting EAR's late amendment designating a new transmitter location.

■ Unfortunately for Red Rock, the hard look policy is not misnamed. As we have confirmed, "applications failing to meet specified criteria will be dismissed without a hearing." *JEM Broadcasting Co., Inc. v. FCC,* 22 F.3d 320, 328 (D.C.Cir.1994) (emphasis deleted). Only if the "snapshot" revealed that its application was acceptable could Red Rock be given an opportunity to amend its application after the expiration of the 30–day amendment period. Because Red Rock's information statement represented an attempt to correct a defect affecting the acceptability of its application, the FCC properly dismissed it as an untimely curative amendment. In contrast, the FCC properly accepted EAR's amendment specifying a new transmitter site because "[t]he Commission has traditionally considered FAA disapproval to be 'good cause' for a site relocation amendment." *Susan Beauchamp,* 6 F.C.C.R. 490, 491–92 (Audio Servs. Div.1991) (citation omitted). Therefore, the FCC did not act arbitrarily in refusing to accept Red Rock's untimely information statement while accepting EAR's amendment.

■ Finally, Red Rock relies on *Clearlake Broadcasting Co.,* 47 Fed.Reg. 47,931 (Broadcast Bureau 1982) to argue that the FCC should have designated its application for comparative hearing with EAR's application. In *Clearlake,* a short-spaced applicant raised a question about the other applicants' compliance with the agency's "line-of-sight" rule, which requires that there be no major obstruction between an FM station's antenna and the principal city or cities it is to serve. *Id.* at 47,932 & n. 2. The FCC designated the question for hearing because its review of the claims and engineering studies "indicate[d] that a question of fact exist[ed] that would be best treated during the comparative hearing process." *Id.* We have since held that it is FCC policy to "designate a short-spacing issue for resolution at a hearing '*only* when an applicant can raise a substantial question of fact concerning its opponents' non-short-spaced sites.'" *North Texas Media,* 778 F.2d at 34 (quoting *Clearlake*) (emphasis added).

We note at the outset that *Clearlake* predates the hard look rule; therefore, it is not at all clear to us what relevance it has to the present case, which is concerned with the application of that rule. Nevertheless, as the FCC points out, *Clearlake* is inapplicable here in any event because Red Rock's allegations about EAR do not relate to the FCC's technical criteria. Red Rock insists, however, that the FAA hazard determination raised a substantial question of fact regarding the technical feasibility of EAR's proposed site; further, it argues that the Commission would have acknowledged that fact and returned EAR's application for want of a feasible antenna site if EAR had not hidden the information about the FAA's determination from the FCC for six months instead of reporting it within 30 days, as required by the Commission's regulations (citing 47 C.F.R. § 1.65).

We admit to some sympathy for Red Rock's position here and elsewhere in this case, but we are faced with the understandably rigid requirements of the hard look rule. Contrary to Red Rock's assertion, FAA approval is not one of the FCC's technical acceptance requirements. *See Bobby Duffy,*

7 F.C.C.R. 1734, 1735 (1992). Thus, Red Rock has failed to "raise a substantial question of fact" concerning EAR's site of a kind that we found to warrant a hearing in *North Texas Media.* The situation remains that, upon the expiration of the 30–day amendment period, Red Rock's application contained a clear acceptability problem while EAR's application was in full compliance with Appendix D's requirements. We conclude, therefore, that the FCC was warranted in finding that the hard look rule required the return of Red Rock's application.

### III. CONCLUSION

We hold that the Commission's reasons for denying Red Rock's waiver request were not so insubstantial as to render the denial an abuse of discretion and that its subsequent dismissal of Red Rock's application represented a reasonable exercise of procedural discretion pursuant to its hard look rule. The orders on appeal are therefore

*Affirmed.*