106 F.3d 442
 323 U.S.App.D.C. 173
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
ECI LICENSE COMPANY, L.P., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
 No. 96-1122.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 26, 1996.
 
 Before EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.
 
 JUDGMENT
 
 1
 This case was heard on the petition for review of an order of the Federal Communications Commission. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the petition for review is hereby denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41.
 
 MEMORANDUM
 
 4
 Entertainment Communications Inc. ("ECI") appeals from the denial of a request by the Federal Communications Commission ("FCC") for a waiver of regulations specifying the minimum permissible distances between FM radio station transmitters. ECI contends that the FCC acted arbitrarily and capriciously in not reviewing ECI's waiver application under a prior, more lenient rule, in denying ECI's application when it had granted waivers to certain applicants similarly situated to ECI that submitted their applications during the pendency of an filing freeze observed by ECI, and in failing to give ECI's application the "hard look" mandated by circuit precedents. We deny the petition.
 
 I.
 
 5
 ECI is the owner of WYUU, an FM radio station that broadcasts to Safety Harbor, Florida, its community of license, and the surrounding greater Tampa area. In 1987 WYUU received an upgrade from the FCC allowing it to expand its area and population of service. Shortly after upgrading, WYUU began to experience severe reception problems in its service area. After study, WYUU concluded that the problem was caused by the atmospheric consequences of temperature inversions. WYUU then began searching for a new site to relocate its antenna.
 
 
 6
 Under § 307(b) of the Communications Act of 1934, 47 U.S.C. § 307(b), the FCC has established rules for the required distances between FM stations with particular antenna heights and power levels in order to prevent stations from causing one another signal interference.[1] In 1963 the FCC promulgated a nationwide table of commercial FM channel allotments,[2] requiring all stations to be located at specified minimum distances from other stations depending on their respective frequencies and classes.[3]
 
 
 7
 During the 1980s, the FCC liberalized its rules to enable the licensing, under certain circumstances, of transmitter sites that were "short-spaced," i.e., the distance to the next transmitter site was less than normally required under the allotment tables.[4] Under the amended rule, the FCC would license the use of short-spaced transmitter sites where licensees proposed to "directionalize" their antennas so as to protect the signal contours of nearby stations. However, the FCC limited the amount of permissible short-spacing between even those classes of stations that used contour protection. With respect to stations in the same classification as WYUU, as initially promulgated in 1989, 47 C.F.R. 73.215(e) required a minimum distance of 169 kilometers between two stations.[5] In 1991, the rule was amended to impose a minimum required distance of 176 kilometers.[6] When it initially enacted the 1989 more lenient rule, the FCC anticipated receiving a large number of applications for short-spaced station sites. Concerned about the strain on its administrative resources, the FCC imposed a temporary freeze on applications for sites where the short spacing would be greater than 8 kilometers.[7] By the time the temporary freeze was lifted on November 9, 1992,[8] the increase in the minimum required distance from 169 kilometers to 176 kilometers had already taken place.
 
 
 8
 In 1989, ECI determined that its reception problems could be alleviated by relocating its antenna to the "Lodestar site," which was located 170.9 kilometers from the transmitter site of the nearest adjacent channel and which, although "short-spaced" by approximately 18 kilometers, was in compliance with the 169 kilometer minimum distance imposed by § 73.215. According to ECI officials, ECI was prepared to file an application with the FCC to use the Lodestar site in 1989, but did not do so because of the temporary freeze. ECI contends that, were it not for the freeze, WYUU's application would otherwise have met the specifications in § 73.215. ECI asserts that upon inquiring about a waiver of the temporary freeze, it was told by FCC staff that no waivers would be granted. ECI later learned that one waiver to the temporary freeze was, in fact, given to the Lebanon Broadcasting Company.[9] By the time the freeze was lifted, § 73.215 as amended necessitated that ECI apply for a waiver because its application to use the Lodestar site no longer met FCC specifications. In its waiver application, ECI argued that because it would have filed earlier absent the freeze, its application to use the Lodestar site should be evaluated as if it had been submitted under the more lenient 1989 version of § 73.215, which would have permitted a separation distance of 170.6 kilometers. The Mass Media Bureau denied the application, and the FCC denied rehearing.[10]
 
 
 9
 ECI contends that the FCC's denial of its application for a waiver was arbitrary, capricious, and an abuse of discretion in that, through the temporary freeze, the FCC kept ECI from submitting its application at a time when it would have met all the requirements under § 73.215. ECI also contends that in granting a waiver of the 8 kilometer restriction to Lebanon Broadcasting despite having told ECI that no such waivers would be available, the FCC violated the Administrative Procedure Act, which requires publication of rules and regulations.[11] Lastly, ECI contends that the FCC failed to give the requisite "hard look" to its waiver application and that the denial issued by the FCC was improper because it was not based upon a finding that the waiver would not be in the public interest. We find no abuse of discretion by the FCC in denying the waiver application. Red Rock Broadcasting, Inc. v. FCC, 94 F.3d 698, 707 (D.C.Cir.1996).
 
 
 10
 Contrary to ECI's contention, that WYUU may have been ready and willing to file its application when the 169 kilometer limit under the 1989 version of § 73.215 was in place, but was barred from doing so by the temporary freeze, does not mean that ECI was permanently entitled to have its application reviewed under the more lenient short-spacing rule rather than the more stringent version adopted in 1991. See Ass'n of Accredited Cosmetology Schools v. Alexander, 979 F.2d 859, 864 (D.C.Cir.1992). The amendment stiffening the distance regulations was enacted through a rule making proceeding; ECI could have participated in that proceeding, but chose not to. Nor did it challenge the FCC's temporary freeze. ECI's reliance on staff statements is misplaced, given that the FCC's rules allowed applications for waivers to be filed. See 47 C.F.R. § 1.3; Malken FM Associates v. FCC, 935 F.2d 1313, 1319 (D.C.Cir.1991). In addition, because ECI failed to apply for a waiver under FCC rules, ECI cannot show that the FCC acted in a discriminatory manner by granting waivers to others while the freeze was in place. Had ECI filed for a waiver and been denied, its discovery that Lebanon Broadcasting Co. was granted a waiver during the freeze period would have presented the court with a far different case, potentially falling within the strictures of WAIT Radio v. FCC, 418 F.2d 1153, 1159 (D.C.Cir.1969), on which ECI relies. But having failed to apply for a waiver, ECI cannot now demonstrate that it was the victim of a discriminatory denial by the FCC.
 
 
 11
 Finally, because the FCC stated its reasons for denying the application, ECI's contention that the FCC failed to give ECI's application the required "hard look" review is meritless. As the court noted in Red Rock Broadcasting, " '[t]he Commission need not grant a waiver of its Rules unless an application therefor sets out adequate reasons why the Rules should be waived....' " 94 F.3d at 702 (citing Rio Grande Family Radio Fellowship, Inc. v. FCC, 406 F.2d 664, 666 (D.C.Cir.1968)). Further, "[t]he FCC has explained that the 'spacing requirements presumptively serve the public interest, and applicants seeking waivers to operate from short-spaced sites are required to demonstrate that the public interest will be better served by a waiver in the circumstances presented than by following the terms of the rule.' " Id. (citing In re Caloosa Television Corp, 3 F.C.C.R. 3656, 3657 (1988), on recon., 4 F.C.C.R. 4762 (1989)). In evaluating a denial of a waiver request, "the role of the court is not to determine the public interest but to determine whether the agency's delineation is contrary to law." Red Rock Broadcasting, 94 F.3d at 703 (citing WAIT Radio, 459 F.2d 1203, 1207 (D.C.Cir.1972).
 
 
 12
 Because ECI's waiver request relied so heavily on the equitable argument concerning ECI's alleged mistreatment by the FCC, and included little discussion of the public interest rationales in favor of its application, the FCC's reasoning, though terse, passes muster under the "hard look" standard. See WAIT Radio, 459 F.2d at 1210. In seeking rehearing, ECI did not address some of the rationales proffered in the Mass Media Bureau's letter, including the fact that atmospheric interference is widespread and that granting a waiver on this basis could set a precedent that would open the floodgates for hundreds of other applications, potentially undermining the nation-wide FM allocation system.[12] While maintaining that its situation is unique, ECI focuses only on the fact that it bore the brunt of the FCC's shifting policies, not that its waiver request is based on substantive grounds different from those many other parties will adduce. Beyond noting that "a substantial percentage of the station's listeners work and/or live within the areas of Tampa affected by the interference," ECI does not explain why the grant of a waiver is in the public interest even though Tampa is not WYUU's community of license and is already well served by other stations.
 
 
 13
 Under WAIT Radio, to fulfill the requirements of the "hard look" doctrine, the FCC must articulate the "methods by which, and the purposes for which, it has chosen to act, as well as its assessment of the consequences of its orders for the character and future development of the industry." 418 F.2d at 1156. The FCC indicated that it approached ECI's request by examining past practice, which revealed that waiver requests have never been granted based on atmospheric interference, and assessing the public interest, which did not necessitate ensuring improved service by WYUU to the population of Tampa. The FCC noted the purposes behind its general rule imposing the mileage limitation, and stated that one of the goals of the liberalized distance requirements was to enhance service "to smaller, more suburban or rural communities."[13] Any waiver will, by definition, expand or improve the service available to some pool of listeners, meaning that this alone will not constitute grounds for a waiver grant.
 
 
 14
 In WAIT Radio, by contrast, the station supported its application with specific information concerning its broadcast services, and showed that what it proposed to offer was "unique" in the area, and that there was strong "listener preference for such programming." 418 F.2d at 1155. The FCC's response to WAIT's application implied that the request could "not be entertained because it failed to proceed broadside against the clear channel policy," imposing a standard that the court found to be erroneous because "the very essence of waiver is the assumed validity of the general rule." Id. at 1157-58. The FCC did not reject ECI's application based on a misapprehension concerning the premises of the waiver concept, but rather due to its determination that ECI's proposal did not merit relaxation of FCC regulations. See North Texas Media, 778 F.2d at 32. The court in WAIT also concluded that it could not review the waiver denial because the FCC had failed to issue a statement of its "reasons or findings." 418 F.2d at 1158. Here, the FCC has made its reasons clear.
 
 
 
 [1]
 FM Broadcast Rule (First Report and Order ), 40 F.C.C. 622, 666 (1962)
 
 
 [2]
 47 C.F.R. 73.202; Revision of FM Broadcast Rules, Third Report, Memorandum Opinion and Order, 40 F.C.C. 747, 757-58 (1963)
 
 
 [3]
 40 C.F.R. § 73.207; see North Texas Media, Inc. v. FCC, 778 F.2d 28, 30-31 (D.C.Cir.1985)
 
 
 [4]
 Amendment of Part 73 of the Commission's Rules to Permit Short-Spaced FM Station Assignments by Using Directional Antennas, 4 FCC Rcd 1681 (1989), on recon., 6 FCC Rcd 5356 (1991)
 
 
 [5]
 6 FCC Rcd at 5359
 
 
 [6]
 See Amendment of Part 73 of the Commission's Rules to Permit Short-spaced FM Station Assignments Using Directional Antennas, 6 FCC Rcd 5356 (1991)
 
 
 [7]
 4 FCC Rcd at 1688 p 48; 47 C.F.R. § 73.215(e) Note. The Note stated:
 Until further Notice, the Commission will not accept applications that specify short-spaced antenna locations pursuant to this section wherein the proposed distance separation is less than the normally required distance separation in § 73.207 by more than 8 kilometers (5 miles). This temporary restriction will be removed when the Commission determines that available resources are sufficient to allow the timely processing of additional applications proposing short-spaced locations using contour protection.
 
 
 [8]
 57 Fed.Reg. 46,325 (1992)
 
 
 [9]
 Statement of Justification for Non-Routine Grant, In re: Lebanon Broadcasting Company, Inc., (File No. BPH-900122IG) (April 22, 1991)
 
 
 [10]
 In re Application of ECI License Company for Minor Change (Transmitter Site) in Licensed Facilities, 11 FCC Rcd. 3535 (1996)
 
 
 [11]
 5 U.S.C. § 551, et seq. (1996)
 
 
 [12]
 11 FCC Rcd 3545, 3546 (1996)
 
 
 [13]
 11 FCC Rcd at 3546. See also Red Rock Broadcasting, 94 F.3d at 703-04